JAMESON, Senior District Judge:
 

 Crocker National Bank, a secured creditor, has appealed from a judgment of the bankruptcy court, 10 B.R. 711 (Bkrtcy.C.D.Cal.1981), affirmed by the bankruptcy appellate panel, 27 B.R. 1004 (Bkrtcy. 9th Cir.1983) denying Crocker relief from the automatic stay imposed under 11 U.S.C. § 362(a). We reverse and remand to the bankruptcy court for further findings.
 

 I.
 
 Issue on Appeal
 

 The sole issue is whether an underse-cured creditor who is stayed by a bankruptcy petition from repossessing its collateral is entitled, under the concept of “adequate protection”, 11 U.S.C. § 361, 362, to compensation for the delay in enforcing its rights against the collateral.
 

 II.
 
 Facts and Proceedings Below
 

 The facts are not disputed. In 1978 Crocker made a loan to American Mariner secured by a perfected security interest in “basically all of the American Mariner’s assets.” On December 12, 1980, American Mariner filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101-46. At that time American Mariner’s debt to Crocker, including accrued interest, was approximately $370,-000, secured by collateral worth $110,000. Crocker filed a complaint for relief from or modification of the automatic stay under 11 U.S.C. § 362(d)(1) on February 23, 1981. In its complaint, Crocker claimed
 
 inter alia
 
 that it was entitled to adequate protection under 11 U.S.C. §§ 361 and 362(d)(1) in the form of monthly payments equal to Crock-er’s prospective return from reinvestment of the liquidation value of the collateral. Crocker argues that state law grants the secured creditor the right, on the debtor’s
 
 *428
 
 default, to take possession of the collateral, sell it, and loan the money out at interest. To the extent that the automatic stay delays or prohibits the creditor from exercising these rights, Crocker contends, the creditor is denied the present value of its interest in the collateral. Since section 361(3) requires such “adequate protection” as will provide the secured creditor with the “indubitable equivalent” of its interest in the collateral, Crocker concludes that it was entitled to monthly payment as compensation for what it might have earned on the reinvestment of its liquidated interest in the collateral.
 

 The bankruptcy court rejected Crocker's contention that the value of its interest in the collateral was not adequately protected. For the purposes of section 362(d)(2), the court found: (1) the liquidation value of the collateral was $110,000; (2) the collateral was not depreciating
 
 [1]
 
 ; and (3) the collateral was “necessary for an effective reorganization.” 10 B.R. at 712. In this appeal, Crocker does not contest the bankruptcy court’s appraisal of the collateral nor its finding that the collateral is necessary for effective reorganization. In any case these findings are not clearly erroneous, and must therefore be affirmed. Fed.R.Civ.P. 52(a).
 

 Crocker appealed the adequate protection determination to the Bankruptcy Appellate Panel of the Ninth Circuit. The appellate panel majority
 
 [2]
 
 similarly rejected Crock-er’s contentions. The majority recognized, however, that “[i]t is difficult to determine what Congress intended should constitute adequate protection in the context of the stay.... Apart from inferences to be sought from the use of the indubitable equivalent language, there is no expression of an intent to compensate the secured party for the delay....” 27 Bankr. at 1009. While Crocker argued that the focus of protection was the value of
 
 its interest
 
 in the collateral, the majority concluded that “[a] construction more consistent with the language and policy to be served would recognize that it is the value of the collateral which is the focus of protection.” 27 B.R. at 1010. Since the trial court had protected the collateral against depreciation, the majority affirmed the trial court’s judgment as “consistent with the policy and language of § 361(1).”
 

 III.
 
 Jurisdiction
 

 In reviewing appeals from the bankruptcy courts, we have recognized “[o]ur obligation to determine sua sponte the finality of the order on appeal.”
 
 In re Exennium, Inc.,
 
 715 F.2d 1401, 1402 (9th Cir.1983). In bankruptcy cases the jurisdiction of this court is limited to “all final decisions” of the bankruptcy appellate panels and those exceptional cases set out in 28 U.S.C. § 1293(b). 28 U.S.C. § 1293;
 
 In re Mason,
 
 709 F.2d 1313, 1315 (9th Cir.1983). “A ‘final decision’ generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.”
 
 Catlin v. United States,
 
 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). While the courts do not treat the finality requirement lightly, they recognize some special exceptions to the requirement, generally so as to avoid causing serious harm by delaying the appeal. See,
 
 e.g., Exennium,
 
 715 F.2d at 1402 (citing
 
 Gillespie v. United States Steel Corp.,
 
 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964) (“danger of denying justice by delay” outweighed “inconvenience and costs of piecemeal reviews.”));
 
 Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (collateral order, doctrine);
 
 Forgay v. Conrad,
 
 47 U.S. (6
 
 *429
 
 How.) 201, 12 L.Ed. 404 (1848)
 
 (Forgay-Conrad
 
 rule, order treated as final if it directs delivery of property and irreparable harm would result if appeal delayed).
 

 A threshold issue presented by this case, apparently for the first time in this circuit,
 
 [3]
 
 is whether a decision of the appellate panel affirming an order that denies relief from the automatic stay is final for the purpose of this court’s jurisdiction. We think it is. In reaching this conclusion, we adopt the reasoning of the court in
 
 In re Regency Woods Apartments, LTD,
 
 686 F.2d 899, 902 (11th Cir.1982). In
 
 Regency,
 
 the court initially observed that the collateral order doctrine and
 
 Forgay-Conrad
 
 rule appeared to apply to a district court order granting relief from the automatic stay. More important, the court also noted the provisions of the Bankruptcy Code for expedited and ex parte proceedings on complaints for relief from the automatic stay. 11 U.S.C. § 362(e), (f); see also H.Rep. No. 595, 95th Cong. 2d Sess. 344,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5963, 300-301. From these provisions the court concluded, and we agree, that Congress intended the courts to conclusively and expeditiously adjudicate, apart from the bankruptcy proceedings as a whole, complaints for relief from the automatic stay. Immediate appeal from decisions of the bankruptcy appellate panel is plainly necessary to fulfill such congressional intent. We hold, therefore, that decisions of the bankruptcy courts granting or denying relief from the automatic stay under section 362(d) are final decisions reviewable by this co'urt.
 

 IV.
 
 Standard of Review
 

 This court reviews the bankruptcy court’s findings of fact by the clearly erroneous standard of Fed.R.Civ.P. 52(a).
 
 In re Comer,
 
 723 F.2d 737, 739 (9th Cir.1984). But the bankruptcy court’s conclusions of law are subject to
 
 de novo
 
 review.
 
 Id.
 

 V.
 
 Statutory Language and Legislative History
 

 A.
 
 Section 361 Protects the Value of the Creditor’s Interest in the Collateral
 

 Crocker’s contention that the concept of adequate protection entitles- it to interest on the present value of its collateral is principally founded on two sections of the Bankruptcy Code, 11 U.S.C. §§ 361, 362(d). Section 362(d) authorizes “a party in interest” to request relief from the automatic stay “for cause, including lack of adequate protection of an interest in property.” Section 361 merely illustrates several means of providing adequate protection, and the methods illustrated are not exclusive. See generally 2
 
 Collier on Bankruptcy
 
 ¶ 361.-01 (L. King 15th ed. 1983). Neither section, apparently by design, defines “adequate protection” or prescribes precisely what is to be protected. See H.R.Rep. No. 595, 95th Cong. 2d Sess. 339,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6295. Our inquiry begins with these threshold issues and requires us to construe sections 361 and 362.
 

 In construing the effect of a statute, we begin by examining the statutory language. The Supreme Court recently reviewed the fundamental principles of statutory construction that are relevant here:
 

 We agree with the Secretary that “[t]he starting point in every case involving construction of a statute is the language itself.” But ascertainment of the meaning apparent on the fact of a single statute need not end the inquiry. This is because the plain-meaning rule is “rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.” The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect.
 

 
 *430
 

 Watt v. Alaska,
 
 451 U.S. 259, 265-66, 101 S.Ct. 1673, 1677-78, 68 L.Ed.2d 80 (1981) (citations omitted).
 

 The central issue in this case is not how to provide adequate protection but what is to be protected. The bankruptcy court and bankruptcy panel concluded “that it is the value of the collateral which is the focus of protection.” 27 B.R. at 1010. Crocker insists that section 361 protects the present value of
 
 its interest
 
 in collateral. Section 361 provides:
 

 When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
 

 (1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title or any grant of a lien under section 364 of this title results in a decrease in the value of such entity’s interest in such property;
 

 (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity’s interest in such property; or
 

 (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity’s interest in such property.
 

 Contrary to the conclusion of the bankruptcy court, the foregoing language provides for adequate protection of
 
 “an interest of an entity
 
 in property ... to the extent that the stay ... results in a decrease in
 
 the value of such entity’s interest
 
 in such property.” (emphasis added). The plain meaning of this language must control unless we can point to convincing evidence that Congress intended something different by the words it chose. See
 
 Watt v. Alaska,
 
 451 U.S. at 266, 101 S.Ct. at 1678.
 

 We find the legislative history of section 361 conflicting but not without significant support for the plain meaning of the statute. Both the House and Senate Reports clearly express the congressional intention to provide protection for the secured creditor’s interest and not merely the value of the collateral:
 
 [4]
 

 The interests of which the court may provide protection in the ways described in this section [361] include equitable as well as legal interests. For example a right to redeem under a pledge or a right to recover property under a consignment are both interests that are entitled to protection.
 

 H.R.Rep. No. 595 at 338, 1978 U.S.Code Cong. & Ad.News at 6294, 6295. Arguably the foregoing examples demonstrate some congressional concern for the safety of the property itself, but that concern does not diminish the general intention to protect a broad range of secured creditors’ interests. As the appellate panel observed, the reports do not specifically mention the se
 
 *431
 
 cured creditor’s legal right to take possession of and sell the collateral; nor do the reports mention the creditor’s equitable right to reinvest the proceeds of the sale. Unquestionably, however, these are valuable rights of secured creditors, and nothing in the reports suggests they are not among those equitable and legal interests entitled to protection.
 

 The House Report emphasizes the breadth of adequate protection:
 

 It is not intended to be confined strictly to the constitutional protection required, however. The section, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor’s interest. Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.
 

 H.R.Rep. No. 595 at 339, 1978 U.S.Code Cong. & Ad.News at 6295. In this case it is clear that Crocker is
 
 not
 
 entitled to the “absolute right to his bargain,” which is the right to take possession of and sell, the collateral. The bankruptcy court’s finding that the collateral is “necessary to an effective reorganization” made this impossible. Nonetheless, Congress seems to have recognized that the secured creditor’s rights of repossession and sale are part of its “bargain,” which section 361 insures it will receive at least “in value” if not “in kind”.
 
 [5]
 

 Value is another term intended to have broad scope in the context of providing adequate protection to secured creditors. The House Report stresses that the language of section 361 is directed toward “the value of the protected entity’s interest in the property involved.”
 

 The section does not specify how value is to be determined nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles.
 

 H.R.Rep. No. 595 at 339, 1978 U.S.Code Cong. & Ad.News at 6295. In this case we are engaged in precisely the sort of case-by-case interpretation and development intended by Congress.
 

 We recognize that a congressional directive for “case-by-case interpretation and development” must not be abused. Such judicial interpretation must not overlook the overriding purpose of the automatic stay, namely to give the debtor “a breathing spell from his creditors ... [to permit] the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.” H.R.Rep. No. 595 at 340, 1978 U.S.Code Cong. & Ad.News at 6296-97. Nor can we ignore the purposes of business reorganization under Chapter 11 to initially relieve the debtor of its prepetition debts, to free cash flow to meet current operating expenses, and ultimately to permit the debtor “to restructure a business’s finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders.”
 
 Id.
 
 at 220, 1978 U.S. Code Cong. & Ad.News at 6179.
 

 At the same time, it seems clear that sections 361 and 362 include exceptional provisions specifically intended by Congress to benefit secured creditors at the expense of the debtor.
 
 [6]
 
 In addition to the
 
 *432
 
 substantive requirement of adequate protection, three procedural provisions of section 362 openly favor the interests of secured creditors over those of the debtor: (1) under 362(e) the stay terminates automatically (leaving the creditor free to proceed against the collateral) if a hearing is not held within 30 days; (2) 362(f) provides creditors with ex parte relief under limited circumstances; and (3) in all proceedings the debtor bears the burden of proving that the creditor’s interest is adequately protected. We are convinced, therefore, that the case-by-case development, guided by equitable principles as Congress envisioned, must recognize and protect the
 
 value
 
 of a creditor's interest when, as here, that value is demonstrated to exist and is measurably threatened.
 

 B.
 
 Adequate Protection, Compensation, and Indubitable Equivalent
 

 The bankruptcy appellate panel concluded that adequate protection “is intended to provide a measure of protection against, rather than compensate for, risk.” 27 B.R. at 1012. We disagree. Whether protection is adequate depends directly on how effectively it compensates the secured creditor for loss of value. Sections 361(1) and (2) by their own terms compensate for “a decrease in the value” of the secured creditor’s interest. The compensatory nature of adequate protection is even more apparent from the catch-all alternative of section 361(3) authorizing “such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity’s interest in such property.”
 

 The history of 361(3) with the phrase “indubitable equivalent” lends significant support to the contention that section 361 protects the present value of the secured creditor’s interest. Subsection (3) was the product of a compromise between the more restrictive Senate version of 361 and the expansive House version. See 124 Cong.Rec.H. 11092 (daily ed. Sept. 28, 1978) (statement of Representative Edwards of California). The Senate bill had specified two exclusive methods for providing adequate protection, S.Rep. No. 989, 95th Cong. 2d Sess. 54, 1978 U.S.Code Cong. & Ad.News 5787, 5840, while the House bill contained four methods including a provision for an administrative expense priority and a general provision similar to the present subsection (3), but without the indubitable equivalent language. The compromise removed the administrative expense priority
 
 [7]
 
 and added the novel requirement of indubitable equivalence.
 

 Since the original House language provided for “such other relief as will result in the realization by such entity of the value of such entity’s interest in such property,” we must determine whether Congress intended to change the meaning of the subsection by adding the phrase “indubitable equivalent”. After examining the origins of the phrase and its use elsewhere in the Bankruptcy Code, we conclude that it at least encourages if not requires a present value analysis under section 361.
 

 As the bankruptcy court recognized, Congress derived the term “indubitable equivalent” from Judge Learned Hand’s opinion in
 
 In re Murel Holding Corp.,
 
 75 F.2d 941 (2d Cir.1935). In
 
 Murel,
 
 Metropolitan Life Insurance Co. held a mortgage on an apartment house. When the apartment house owners defaulted on the mortgage, Metropolitan attempted to foreclose, but the own
 
 *433
 
 ers obtained an ex parte stay after filing a petition for reorganization under section 77B of the Bankruptcy Act of 1898 (former 11 U.S.C. § 207). The owners then proposed a plan of reorganization that required Metropolitan to forego amortization payments and extend the due date of the mortgage while the apartment house was renovated. Metropolitan would have received interest in the meantime. Metropolitan rejected the plan and moved to vacate the stay, but its motion was denied.
 

 On appeal Metropolitan argued that its interest was not adequately protected. Judge Hand, for the court, noted that the plan had little hope of success and the ability of the apartment house to satisfy Metropolitan’s accruing claims was declining. 75 F.2d at 942. Judge Hand admitted, however, that the court had the power to confirm a plan over the objection of creditors if the plan provided “adequate protection for the realization by them of the full value of their interest, claims, or liens.”
 
 Id.
 
 He then explained the concept of adequate protection:
 

 In construing so vague a grant, we are to remember not only the underlying purposes of the section, but the constitutional limitations to which it must conform. It is plain that “adequate protection” must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most
 
 indubitable equivalence.
 

 Id.
 
 (emphasis added). The court concluded that the protection offered was inadequate and ordered the stay dissolved.
 

 In its context, Judge Hand’s interpretation of adequate protection emphasizes two factors. First, it suggests that to be “completely compensatory” adequate protection must compensate for present value, “that payment ten years hence is not generally the equivalent of payment now.” This protection the owners of the apartment house provided in the form of interest. Second, adequate protection must insure the safety of the principal. This the owners failed to do. Judge Hand concluded that the creditor’s right “to get his money or at least the property” may be denied under a plan for reorganization only if the debtor provides “a substitute of the most indubitable equivalence.” Such a substitute clearly must both compensate for present value and insure the safety of the principal. Significantly, however, Judge Hand added that “[n]o doubt less will be required to hold up the suit for a short time until the debtor shall have a chance to prepare.”
 
 Id.
 
 at 943. This qualification, of course, reflects the absence under the former Bankruptcy Code of a statutory requirement for adequate protection during the stay, not to mention the absence of a requirement for an automatic stay.
 

 In the Bankruptcy Reform Act of 1978, “indubitable equivalent” first appeared in the Senate’s version of section 1129(b), as part of the so-called cram down provisions similar to those encountered by Judge Hand. But for the use of “indubitable equivalent,” it was not clear whether the section required present value compensation. In its final form, however, 11 U.S.C. § 1129(b)(2)(A)(i)(II) clearly requires deferred cash payments under a reorganization plan to equal the present value of the allowed claim. The “indubitable equivalent” requirement appears in section 1129 (b)(2)(A)(iii) as an alternative to deferred payments and carries with it, from its original context in
 
 Murel,
 
 the requirement of compensation for present value. See 124 Cong.Rec.H. 1104 (daily ed. Sept. 28, 1978) (statement of Representative Edwards approving present value analysis at H.R.Rep. No. 595 at 414-15, 1978 U.S.Code Cong. & Ad.News at 6370-71); S.Rep. No. 989 at 127, 1978 U.S.Code Cong. & Ad. News at 5913 (“The indubitable equivalent language is intended to follow the strict approach taken by Judge Learned Hand in
 
 *434
 

 In re Murel Holding Corp.,
 
 75 F.2d 941 (2d Cir.1935)”).
 

 Against the foregoing background, we conclude that the use of the term “indubitable equivalent” in section 361 is significant of congressional intent. When the term was first employed by Judge Hand, the Bankruptcy Code did not require adequate protection during a temporary stay. Congress understood the term to represent a “strict approach” to adequate protection in the context of the cram down provisions. Use of the term in section 1129 plainly illustrates that Congress well understood the meaning of the term in its original context and intended to adopt the strict approach that the term represents. That Congress in 1978 should require adequate protection during the automatic stay and then add to that requirement language representing a strict approach to adequate protection convinces us that Congress intended to adopt or at least encourage the same approach to adequate protection in sections 361 and 362.
 

 VI.
 
 Cases on Adequate Protection
 

 The early cases, decided before enactment of the Bankruptcy Reform Act of 1978, are of little relevance in construing sections 361 and 362.
 
 [8]
 
 Among the recent cases construing these sections there is a split of authority. Several courts have relied in part on Judge Hand’s opinion in
 
 Murel
 
 to require adequate protection under section 361 of the present value of the secured creditor’s interest. See,
 
 e.g., In re Langley,
 
 30 B.R. 595, 603-06 (Bkrtcy.N.D.Ind.1983);
 
 Metropolitan Life Insurance Co. v. Monroe Park,
 
 17 B.R. 934, 940 (D.Del.1982);
 
 In re Virginia Foundry Co. Inc.,
 
 9 B.R. 493, 497-98 (D.C.W.D.Va.1981);
 
 In re Anchorage Boat Sales, Inc.,
 
 4 B.R. 635, 641-44 (Bkrtcy.E.D.N.Y.1980).
 

 An apparently growing number of bankruptcy courts approve the view, adopted by the bankruptcy appellate panel in this case, extending adequate protection to the value of the collateral alone. See,
 
 e.g., In re Aegean Fare, Inc.,
 
 34 B.R. 965 (Bkrtcy.D.Mass.1983);
 
 In re Shriver,
 
 33 B.R. 176 (Bkrtcy.N.D.Ohio 1983);
 
 In re Cantrup,
 
 32 B.R. 1004 (Bkrtcy.D.Colo.1983);
 
 In re Saypol,
 
 31 B.R. 796 (Bkrtcy.S.D.N.Y.1983);
 
 In re South Village, Inc.,
 
 25 B.R. 987 (Bkrtcy. Utah 1982);
 
 In re Pine Lake Village Apartment Co.,
 
 19 B.R. 819 (Bkrtcy.S.D.N.Y.1982);
 
 In re Alyucan Interstate Corp.,
 
 12 B.R. 803 (Bkrtcy.Utah 1981).
 
 [9]
 
 The majority of these courts have relied heavily on the detailed, thorough analysis of Judge Mabey in
 
 South Village
 
 and
 
 Alyucan.
 
 While we appreciate the care taken in this analysis, we conclude that
 
 South Village
 
 and
 
 Alyucan
 
 accord'insufficient weight’to the language of the statute and the con
 
 *435
 
 gressional goal of affording the secured creditor the benefit of its bargain.
 

 VII.
 
 Conclusions
 

 The secured creditor’s right to take possession of and sell collateral on the debtor’s default has substantial, measurable value. The secured creditor bargains for this right when it agrees to extend credit to the debt- or and both parties consider the right part of the creditor’s bargain. The right constitutes an “interest in property” that is “created and defined by state law,” and we are aware of no federal interest that requires this right of the secured creditor to go unprotected “simply because an interested party is involved in a bankruptcy proceeding.” See
 
 Butner v. United States,
 
 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-918, 59 L.Ed.2d 136 (1979). The Court in
 
 Butner
 
 observed that “[u]niform treatment of property interests by both state and federal courts within a State serves ... to prevent a party from receiving ‘a windfall merely by reason of the happenstance of bankruptcy.’ ” 440 U.S. at 55, 99 S.Ct. at 918 (quoting
 
 Lewis v. Manufacturers National Bank,
 
 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961)). To the extent that the debtor in bankruptcy can prevent the secured creditor from enforcing its rights against collateral while the debtor benefits from the creditor’s money, the debtor and his unsecured creditors receive a windfall at the expense of the secured creditor.
 

 We conclude that sections 361 and 362(d) were drafted to preclude such a windfall and to insure that the secured creditor receives the benefit of its bargain. We are satisfied that our holding in this case will not inhibit successful reorganization but rather will promote among other things the ready availability of affordable credit.
 
 [10]
 

 We hold that Crocker National Bank is entitled to compensation for the delay in enforcing its rights during the interim between the petition and confirmation of the plan.
 
 [11]
 
 Crocker contended that such compensation should take the form of monthly interest payments at the market rate on the liquidation value of the collateral. We agree that this is one method of providing adequate protection but by no means the only method available to the debtor. Consistent with the policies behind sections 361 and 362, the debtor should be permitted maximum flexibility in structuring a proposal for adequate protection. The result, however, should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights.
 
 [12]
 

 REMANDED for further findings by the bankruptcy court consistent with this opinion.
 

 [1]
 

 . The bankruptcy court ordered American Mariner to pay Crocker $1,770 each month to protect against possible depreciation of the collateral. If it is later determined that the payments exceeded depreciation, the excess is to be applied to the principal of Crocker's allowed claim. The court arrived at the $1,770 figure by taking judicial notice that 18%, then the current prime interest rate, on $110,000, the collateral’s liquidation value, yielded monthly payments of $1,770.
 

 [2]
 

 . Judge Hughes dissented and in a well reasoned opinion accepted Crocker’s principal contention that the present value of its interest in the collateral was entitled to adequate protection.
 

 [3]
 

 .
 
 In re Bialac,
 
 712 F.2d 426 (9th Cir.1983) concerned an appeal from the bankruptcy appellate panel decision granting relief from the automatic stay. The court reversed the appellate panel without discussion of jurisdiction.
 

 [4]
 

 . Although the Senate version of section 361 proposed to protect "the value of such entity’s interest in such property," the section was considerably more restrictive than the House version. S.Rep. No. 989, 95th Cong. 2d Sess. 54, 1978 U.S.Code Cong. & Ad.News 5787, 5840. As a gloss on one of the two methods permitted by the Senate version for providing adequate protection, the Senate Report notes that the method was "consistent with the view expressed in
 
 Wright v. Union Central Life Ins. Co.,
 
 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940), where the Court suggested that it was the value of the secured creditor's collateral, and not necessarily his rights in specific collateral, that was entitled to protection.”
 
 Id.
 
 Read in the context of the broad scope attributed to the term "value” in section 361 and the wide range of interests to be protected, we think the citation to
 
 Wright
 
 cannot be construed to limit adequate protection to the value of the collateral. Nonetheless, no such gloss appears in the House Report on its version of section 361, and its expansive approach to adequate protection was ultimately adopted by Congress. The only reference to
 
 Wright
 
 in the House Report is the observation that adequate protection under section 361 is not confined to the constitutional protection required in
 
 Wright.
 
 H.R.Rep. No. 595 at 339, 1978 U.S.Code Cong. & Ad.News at 6295.
 

 [5]
 

 . "The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession.”
 
 United States v. Whiting Pools, Inc.,
 
 462 U.S. 198, 103 S.Ct. 2309, 2314-15, 76 L.Ed.2d 515 (1983).
 

 [6]
 

 . Representative Edwards of California, a principal architect of the Bankruptcy Reform Act of 1978, observed that a major problem with the former bankruptcy process and an impetus to reform was "that creditors were not getting enough money out of bankruptcy proceedings
 
 *432
 
 to make it worth their while to participate in attempting to recover their money.” Edwards admitted that
 

 [t]here is little we can do to make creditors participate when they do not want to, but we can protect their interests by more careful supervision of bankruptcy administration than exists today. That is part of the reason that we have proposed the United States trustee system ... to supervise the people employed by the bankruptcy system to insure that it operates for the benefit of those whose money is involved — the creditors.
 

 123 Cong.Rec.H. 11698 (daily ed. Oct. 27, 1977). To the extent that it provides the creditor with the benefit of his bargain, section 361 addresses what Congress perceived as one of the most serious shortcomings of the bankruptcy system.
 

 [7]
 

 . Congress shifted the administrative expenses priority provision to 11 U.S.C. § 507(b) as
 
 post-factum
 
 protection in the event adequate protection fails.
 

 [8]
 

 . See,
 
 e.g., In re Bermec Corp.,
 
 445 F.2d 367 (2d Cir.1971);
 
 In re Yale Express, Inc.,
 
 384 F.2d 990 (2d Cir.1967);
 
 Reconstruction Finance Corp. v. Kaplan,
 
 185 F.2d 791 (1st Cir.1950);
 
 Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co.,
 
 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935). The Senate Report cited
 
 Bermec
 
 as an example of periodic cash payments to compensate the creditor for decrease in the value of its. interest through depreciation. S.Rep. No. 989 at 54, 1978 U.S. Code Cong. & Ad.News at 5840. (House Report cites
 
 Yale
 
 for same proposition at H.R.Rep. No. 595 at 339, 1978 U.S.Code Cong. & Ad.News at 6295.) Besides noting that payments in
 
 Bermec
 
 may not have been adequate, the report adds that depreciation payments "might, but need not necessarily, be in the same amount as payments due on the secured obligation." These observations reflect a recognition that the creditor’s loss will likely exceed mere physical depreciation of the collateral.
 

 Kaplan
 
 and
 
 Continental
 
 considered
 
 inter alia
 
 whether some form of protection was constitutionally required for the duration of an injunction in bankruptcy. So long as the creditor’s lien and preferred position are not impaired, it seems no such-protection is constitutionally necessary.
 
 Continental,
 
 294 U.S. at 676-77, 55 S.Ct. at 606-07. The court in
 
 Kaplan
 
 stressed, however, that courts should “not overplay the distinction between rights and remedies. No doubt the secured creditors in the [Continental] case felt that their 'rights’ had been impaired when they were forbidden to get clear of the transaction by exercising their contractual power of sale of the pledged collateral at a time which seemed to them most favorable to their interests." 185 F.2d at 796.
 

 [9]
 

 . Largely on the basis of
 
 In re American Mariner Industries, Inc.
 
 10 B.R. 711 (Bkrtcy.C.D.Cal.1981), this position has been adopted in 2
 
 Collier on Bankruptcy
 
 para. 361.01 N.a. (L. King 15th ed. 1983).
 

 [10]
 

 . See generally T. Jackson,
 
 Bankruptcy, Non-Bankruptcy Entitlements, and the Creditor's Bargain,
 
 91 Yale L.J. 857, 871-77 (1982). Professor Jackson filed an
 
 amicus curiae
 
 brief in this case in support of Crocker’s position.
 

 [11]
 

 . Since we base our decision on our construction of the statute and its legislative history, we do not reach Crocker’s constitutional contentions.
 

 [12]
 

 . There are a few general guidelines that the trial court and debtor should consider. First, to avoid overcompensating the secured creditor, the timing of adequate protection should take account of the usual time and expense involved in repossession and sale of collateral. See
 
 In re South Village, Inc.,
 
 25 B.R. 987, 996 n. 14 (Bkrtcy.Utah 1982). Second, the market rate of interest is not the only rate that may be applicable under the facts of each case. For example, noting that section 506(b) allows interest to
 
 ov-ersecured
 
 creditors at the
 
 contract
 
 rate, see 3
 
 Collier on Bankruptcy
 
 ¶ 506.05 (L. King 15th ed. 1983), an undersecured creditor would receive a windfall if the market rate of interest exceeds the contract rate. Compensating the creditor at the contract rate, as noted above, is one method approved in the Senate Report. S.Rep. No. 989 at 54, 1978 U.S.Code Cong. & Ad.News at 5840.