**In the Matter of Adolfo S. GALVEZ, d/b/a Medical Surgical Walk-In Clinic and Ma Auxiliadora M. Galvez, Debtors.**

Bankruptcy No. 86–2684.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 29, 1986.

Hugo J. Pesola, Jr., Brandon, Fla., for debtors.

Allan C. Watkins, Tampa, Fla., for movants.

## ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is a Motion for Relief from Automatic Stay filed by Leonard Y. Chancey and Geraldine B. Chancey (Chanceys), creditors in the above-captioned case. The Court has considered the Motion, together with the record, heard arguments of counsel at a final evidentiary hearing, and finds as follows:

The Motion for Relief from Automatic Stay by the Chanceys was filed on August 21, 1986. Chanceys' Motion sought relief from the automatic stay, first, pursuant to § 362(d)(1) for lack of adequate protection and, in the alternative, pursuant to § 362(d)(2) alleging lack of equity in the properties and that the property is not needed for effective reorganization. The Debtor claims that the property is needed for reorganization. The Motion was considered by this Court at a final evidentiary hearing at which time the following facts have been established:

On October 3, 1983, the Chanceys executed and entered into an Agreement for Deed with Adolfo S. Galvez and Ma Auxiliadora Galvez (Debtors) (Chanceys' Exh. # 1). The purchase price was $300,000.00 with interest calculated at 12% for 20 acres of land. The Agreement for Deed term was ten (10) years and for the first year the payments would be $1,500.00 per month and balloon thereafter to $3,180.00 per month for the nine (9) remaining years. It is without serious dispute that the Debtors defaulted on the Agreement for Deed. On August 21, 1986, the total amount due and owing was $370,783.66 plus accrued interest, costs and attorney fees pursuant to the Agreement for Deed. As of the date of the final evidentiary hearing, the total amount of interest in default was $54,-381.83. Moreover, the real estate taxes have not been paid on the property for the tax years of 1984 and 1985. The total amount of delinquent taxes is not clear, however, it appears from the record that $3,061.83 in taxes is owed for the tax year 1984, but there is nothing in the record which would warrant a specific finding as to the precise amount of the total taxes owed on this particular property for the tax year 1985.

It should also be noted that the Debtors own other properties which are heavily encumbered. The Debtors operate a motel and a medical clinic. There are three mortgages on the motel property which are as follows: the first mortgage monthly payment is $800.00; the second mortgage payment is $300.00; and the third mortgage is $800.00 for a total of $1,900.00. The medical clinic property has a first mortgage with a $550.00 monthly payment. The property that is adjacent to the medical clinic which is owned by the Debtors has a first mortgage of $600.00 per month. The total sum of these mortgage payments per month is $3,050.00 which added to the Chanceys mortgage payment of $3,180 equals a total sum of $6,230.00 mortgage payments per month by the Debtors.

The Debtors stated that their primary objective with respect to the property of the Chanceys is to live in the house located thereon which is located in close proximity to the Debtors medical clinic. The Debtors conceded, as they must, that they do not need all 20 acres, but only the house for an effective reorganization.

The experts presented by the Chanceys and the Debtors are, as usual, in substantial disagreement as to the current value of

the properties involved. The expert presented by the Debtors was not an experienced expert either by training or education, therefore the values stated by him carried little if any weight as a realistic appraisal of the values of the subject property.

■ On the other hand, the expert of the Chanceys is well qualified and recognized in the industry as an expert on real estate values, thus, this Court is of the opinion that his testimony on values is more realistic and reliable. The stated value on the subject property as indicated by this expert is $320,000.00 and this valuation is accepted by this Court as the value of the property. (Chanceys Exh. # 2).

■ Considering the position of the Chanceys, it appears that they are undersecured. Authorities are not in agreement on the question of whether an undersecured creditor should be furnished adequate protection for "lost opportunity cost", *see In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984); *cf. In re Briggs Transportation Co.*, 780 F.2d 1339 (8th Cir.1985); (adequate protection does not necessarily entitle undersecured creditors as a matter of law to interest payments from Debtor to compensate creditors for lost opportunity costs due to delay in reinvesting collaterals' liquidated value caused by stay) *contra In re Timbers of Inwood Forest Associates, Ltd.*, 793 F.2d 1380 (5th Cir.1986), *reh'g granted en banc* 802 F.2d 777 (5th Cir.1986). This Court is satisfied that the recent decision of the Fifth Circuit Court of Appeals in *Timbers, supra*, is a better reasoned decision and should be followed. In *Timbers, supra*, the Court of Appeals rejected *American Mariner, supra*, and held that an undersecured creditor is not entitled to adequate protection. Based on this premise, this Court is satisfied that Chanceys' request for relief from stay pursuant to § 362(d)(1) cannot be granted. This conclusion, however, does not furnish any solace to the Debtor concerning Chanceys' motion based on § 362(d)(2). This is so because this Court is satisfied that in considering the motion under this Section, this Court must consider the total outstanding indebtedness owed to the party who seeks relief under this Section, *see In re Certified Mortgage Corp.*, 25 B.R. 662 (Bankr.M.D.Fla.1982), *rev'd District Court slip op.* (not generally reported).

■ As noted earlier, the value of the property is $320,000.00 and the indebtedness is $370,783.66 which leaves the Chanceys underwater in the amount of $50,-783.66. This being the case, this asset of the Debtors cannot conceivably be needed for "effective" reorganization. It is evident that the only way this property could play a meaningful role in the Debtors reorganization would be if it could be turned into an economically sound development, a proposition highly problematical at this time, and the value could be utilized by the Debtors to fund a Plan of Reorganization either through refinancing or through sale of the property. The fact of the matter is that the only reason these Debtors seek to hold onto this particular property is because it is in close proximity to their medical clinic and therefore it is a convenient location for their residence. It is conceded that the Debtors certainly do not need 20 acres of land, and this argument furnishes a slender reed, indeed, on which a Chapter 11 debtor could hang and use as support to defeat a motion to lift the automatic stay sought pursuant to § 362(d)(2) of the Bankruptcy Code.

In sum, this record leaves no doubt that this property cannot be needed for an effective reorganization. This being the case, the Chanceys are entitled to be relieved from the automatic stay, at least to the extent of permitting the Chanceys to commence a foreclosure action against the subject property and proceed at least to the point of seeking and obtaining a summary final judgment with the proviso that a foreclosure sale shall not be scheduled without obtaining further relief from this Court.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Relief from

Automatic Stay be, and the same is hereby, granted and the Chanceys are permitted to commence a foreclosure action provided, however, that no foreclosure sale shall be scheduled without further order of this Court.