**In re Mary Alumnit ALVAREZ, Debtor.**

**QUAKER CITY FEDERAL SAVINGS AND LOAN ASSOCIATION, Appellant,**

v.

**Mary ALVAREZ, aka Mary Alumnit Alvarez, Appellee.**

**BAP No. CC–88–1392 VJMo.**

**Bankruptcy No. LAX 84–18417 SB.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 15, 1989.

Decided July 11, 1989.

Robert H. Dewberry and Bewley, Lassleben & Miller, Whittier, Cal., for appellant.

A.T. Funada and Schuchman & Funada, Torrance, Cal., for appellee.

Before VOLINN, JONES and MOOREMAN, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

Appellant creditor, Quaker City Federal Savings and Loan Association (Quaker) appeals the vacation of an order that had granted it relief from stay in the Chapter 13 case of appellee debtor Mary Alumnit Alvarez (Alvarez). Quaker's challenges to the factual and legal bases for the court's ruling lack merit. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. Quaker's Loan to Alvarez

On November 11, 1980, in connection with a loan, Alvarez executed a note to Quaker for $56,250 and a deed of trust, granting the lender an interest in her Los Angeles, California, real estate. The trust deed was recorded on December 1, 1980.

Additionally, the parties entered into a "separate agreement," providing that she make monthly payments into an impound account to provide for payment of annual real property taxes and probably hazard insurance. We do not know the date and terms of the impound arrangements nor whether any of Alvarez' related obligations are secured by the deed of trust. The impound agreement was not provided to the panel in the record on appeal.

#### B. Alvarez' Bankruptcy and Quaker's Order, Modifying the Stay

Alvarez filed for relief under Chapter 13 on September 20, 1984. Quaker's first ap-

plication for relief from stay was denied because, according to Alvarez, it alleged only prepetition arrearages. Her plan was confirmed on November 9, 1984. It provided for monthly payments for three years through the trustee with respect to the prepetition arrearage on her debt to Quaker. It specified also that Quaker would receive monthly postpetition payments as due directly from Alvarez.

Quaker obtained an order, modifying the stay on January 30, 1986, after alleging Alvarez' failure to pay the November and December, 1985, note payments. The order stated that if Alvarez should fail to pay "any post-petition payment due within 15 day grace period, [Quaker] shall be entitled to lift the stay on ex parte application and 10 days notice. Attorneys fees incurred by [Quaker] to become due when the entire indebtedness becomes due."

### C. Quaker's Order, Terminating the Stay

Quaker further applied for relief in November, 1987, based upon Alvarez' alleged failure to pay charges amounting to some $4,600 including her August, 1987, and all later note installments; the related late charges; the real property tax impounds due August 1, 1987, and thereafter; and the annual fire insurance premium of $165. Quaker alleged also that Alvarez was obligated to pay various other charges, including attorney's fees, to be proven. In the motion, Quaker misstated the amount of the monthly installment payment as $705, rather than the $716 then being charged. Calculating from Quaker's allegations concerning liens, Alvarez could then have claimed an equity of about $36,000. Alvarez did not file any written opposition before the hearing noted for December 23, 1987.

At the hearing, it was disclosed that Alvarez' monthly installment payments had been refused due to an alleged deficiency in her tax impound account. Quaker's lawyer, despite Alvarez' willingness and ability to pay all past due note installments and his inability to explain the source of the impound deficiency, persisted in seeking relief because Alvarez had not tendered the tax impound charges claimed due. The court continued the hearing until January 20, 1988, in order to obtain an explanation of the tax impound shortage and the claim for hazard insurance premiums.

Before the hearing, Alvarez filed an affidavit in opposition, stating that she had twice paid the $165 insurance premium sought by Quaker, made all plan payments, and paid all bills submitted by Quaker. Quaker's Real Estate Loan Department Supervisor, Sue Davis (Davis), filed an affidavit, purporting to explain how the impound shortages arose. Her affidavit listed a series of disbursements during 1984–1987 from Alvarez' impound account and resulting balances; this accounting began with an unexplained negative balance, did not show any deposits, and listed after each disbursement a new negative balance that did not follow arithmetically from the amount of the transaction. Finally, Davis asserted that the impound shortage amounted to $1,800 rather than the $1,488.12 claimed in the original motion papers.

Alvarez attended the continued hearing on January 20, 1988. However, when the case was called, her lawyer was absent due to a hearing noted and being held before another judge; however, she did not answer or otherwise indicate her presence. Since there was no record of her appearance, the court granted Quaker's motion. The stay was terminated by order entered on February 5, 1988, even though Alvarez had filed a motion for reconsideration.

### D. Alvarez' Motion for Reconsideration

On reconsideration, Alvarez' lawyer explained how and why he and his client had not appeared during the continued hearing on Quaker's motion for relief from stay. They complained that Quaker after listing some $4,600 in charges required in November 1987, to bring the accounts current, then sought in January, 1988, some $12,000. With respect to a dispute whether Alvarez should have known about the alleged deficiencies prior to Quaker's refusal of her August, 1987, payment, Quaker could not document its claim that it had earlier notified and billed Alvarez except

through two annual tax statements that were each clearly and conspicuously marked "This is not a bill," and otherwise unclearly indicated negative balances in the "impound summary."

By then, the computerized loan transaction records as to the amount and source of the impound shortages had been submitted. From them, it became clear, as the court below determined, that Quaker had undercharged from the beginning for the impounds. While annual taxes amounted in 1984 to some $800 and insurance to $165, Quaker then billed only $31 monthly for impounds when $80 would have been required to fully cover disbursements. Further, Quaker had failed to properly credit Alvarez' insurance payments made twice in 1985 and 1986.

The judge stated that Quaker had a duty to make a reasonable estimate of the impound charges and to include them in the monthly loan payment, and that Quaker had failed to do so. Quaker's lawyer conceded as much.

Quaker's lawyer also conceded at oral argument that Alvarez' failure to pay monthly installments, which were the grounds stated for Quaker's relief from stay motion, resulted from the lender's refusal to accept them when tendered. Noting that Quaker could not under the circumstances complain about not receiving the payments, the court granted Alvarez' motion and vacated its stay order of February 5, 1988. Finding that the evidence was insufficient for determining the amount of the arrearage and the correct monthly payment amount required to prevent the development of additional shortages, the court ordered further that the stay be reinstated except as modified in its order of January 30, 1986; that the debtor pay the seven past due regular monthly payments upon which no late charges could be assessed; Quaker "may" file a claim with the Chapter 13 trustee for postpetition impound arrearage after properly crediting the debtor for her over-payment of insurance; Quaker must correct the monthly billing amount to prevent shortages; and that except, for specific charges mentioned in the order, no

charges could be assessed for "activity prior to this order."

### E.  Quaker's Appeal

The court's order was entered on March 14, 1988, and Quaker timely appealed on March 24, 1988. Quaker asserts that the court's finding that the August 1, 1987, payment was timely made was clearly erroneous. Additionally, in Quaker's view, Alvarez had the burden to prove she timely tendered her payments and failed to do so; the court erred by placing the burden on Quaker. It urges that the court was, therefore, absolutely bound to enforce its January, 1986, order as the law of the case and grant Quaker relief from the stay. Further, the court was clearly wrong by finding that Quaker's claims for impound shortages were in dispute, but in any event failure to pay impounds was not raised by Quaker's motion and thus irrelevant. Additionally, Quaker argues that the court exceeded its authority under 11 U.S.C. § 1329(a) by requiring Quaker to file a claim for its postpetition impound shortages because it constitutes an improper modification of the plan initiated by the court, instead of the debtor, trustee or an unsecured creditor, and it relates to a claim outside of the plan instead of payments already part of the plan. Finally, Quaker contends that the court effectively denied it attorney's fees to which it is entitled for collection activities.

In response, Alvarez argues that the court did not abuse its discretion in believing her testimony that she timely tendered her payments; further, no evidence contradicted her assertion that the lender refused to accept her payments. The court did not amend or refuse to enforce its January, 1986 order, but reinstated its finding that Quaker failed to establish grounds for relief from stay. As to Quaker's collection of impound shortages, the court did not require, but merely permitted Quaker to file a claim that benefits it to the extent that it thereby has the option to seek reimbursement before the conclusion of the plan. Quaker's assertion that payments to it are outside the plan because disbursed directly by the debtor, instead of the trustee, is

incorrect under *In re Glasper,* 28 B.R. 6 (9th Cir. BAP 1983). Finally, although it seems to Alvarez incongruous for Quaker to obtain an attorney fee award to collect amounts actually tendered by the debtor, she notes that Quaker failed to pursue the attorney fee issue and the order does not explicitly or impliedly bind Quaker on any fee question; the order indicated explicitly only that certain late and other unjustified charges that Quaker attempted to tack on may not be collected and reinstated an order providing for the later adjudication of any attorney fee application.

## ISSUES ON APPEAL

(1) Did the court abuse its discretion by granting reconsideration of an order, granting relief from the stay, entered due to default when finding that (a) the debtor and her lawyer's failure to appear was excusable and (b) the nonpayment alleged as the basis for the lender's application arose from its refusal to accept the debtor's payments?

(2) Were the court's findings clearly erroneous that the debtor's alleged failure to pay resulted from the lender's refusal to accept her payments and that the lender's claim for impound shortages was in dispute and not adequately supported?

## STANDARD OF REVIEW

Presumably, although no rule was cited, reconsideration was sought under Bankruptcy Rule 9024, applying Rule 60 of the Federal Rules of Civil Procedure to bankruptcy cases. It is well established that resolutions of applications under Rule 60 are reviewed for abuse of discretion. *E.g., Falk v. Allen,* 739 F.2d 461, 462 (9th Cir. 1984) (citing *SEC v. Seaboard Corp.,* 666 F.2d 414, 415 (9th Cir.1982)).

The bankruptcy court's factual findings are weighed on appeal under the clearly erroneous standard. Bankr.R. 8013; *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Indus., Inc.),* 734 F.2d 426, 429 (9th Cir.1984).

## DISCUSSION

The questions raised by Alvarez' motion for reconsideration were whether her conduct leading to the default was culpable, if she had a meritorious defense to Quaker's motion for relief from stay, and if Quaker would be unreasonably prejudiced. *Falk,* 739 F.2d at 463. The court impliedly decided by granting her motion that Alvarez' silence and her lawyer's delay were excusable. No authority has been cited or found, indicating that the court abused its discretion in this regard.

As to her defense, Quaker's motion was based on Alvarez' nonpayment of mortgage installments. It was undisputed that she had tendered the payments, but Quaker had refused them on the grounds solely of a deficiency in the impound account. It was further undisputed that Alvarez had substantial equity in the property, Quaker had not been adequately billing for the impounds, and Quaker's records were incorrect (or its employees could not read or understand their own records). Accordingly, it was reasonable to infer that Quaker's claim for impound shortages was incorrect and unsupported. Thus, it cannot be said that the court's findings were clearly erroneous, the debtor lacked defenses to Quaker's motions for relief, or that Quaker would be prejudiced by vacation of the order that had granted it relief from the stay and to which it had not been entitled.

Quaker's appeal wholly lacks merit. Even after admitting below that Alvarez' payments were refused due to claimed impound shortages, Quaker argues on appeal that issues of nonpayment of impounds and inaccuracy of the impound claims were not properly before the court.

To support its contention that the court was bound to enforce its January, 1986, order in absence of proof by Alvarez that she timely tendered her payment, Quaker cited *In re Polries Bros.,* 49 B.R. 669 (Bankr.D.N.D.1985). That decision is not applicable because it concerns a court's lack of authority to give a debtor additional opportunities to meet obligations contrary to the terms of a *stipulated* order.

**180**

Quaker questions the court's finding that the claimed amount of the impound shortage was inaccurate and disputed. It is clear, however, from the Davis affidavits and the transcript that Quaker's agents were unable to explain the Alvarez loan records and had failed to properly account for payments made by the debtor.

Quaker raised the issue that the court's order constituted an invalid modification of the plan even though the court merely permitted Quaker to file a claim for impound shortages if it so desired. We note in this regard that Quaker failed to provide a copy of the plan or to acknowledge that its characterization of Alvarez' payments as outside the plan is contrary to *In re Glasper,* 28 B.R. 6, 8–9 (9th Cir. BAP 1983), which prohibited bifurcation of Chapter 13 plan payments to secured creditors so that arrearages are paid through the plan and current payments outside the plan.

Finally, Quaker argued that it had been improperly denied attorney's fees even though it did not argue any issue concerning fees below or account for any fees claimed, and the court's order reserved any question of fees. Assuming that an application for fees would have been reasonable, it is questionable whether Quaker's note would have justified it. The note provides that "[i]f suit is brought to collect this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorneys fees."

## CONCLUSION AND ORDER

Appellant Quaker has not met its burden of demonstrating how the court below abused its discretion when granting Alvarez' motion for reconsideration. Moreover, the issues stated by appellant with respect to the court's authority to grant Alvarez' motion, to consider impound account related issues, and to modify the plan lack any legal foundation. Accordingly, we AFFIRM the order appealed.