In re: Jim Lee WIERSMA; In re: Patricia Darlene Wiersma, Debtors.

Jim Lee Wiersma, et al., Appellants,

v.

Bank of the West, f/k/a United California Bank, Appellee,

United States Trustee, Trustee–Appellee.

In re: Jim Lee Wiersma; In re Patricia Darlene Wiersma, Debtors.

Bank of the West, f/k/a United California Bank, Appellant,

v.

Jim Lee Wiersma; et al., Appellees.

Nos. 05–35246, 05–35248.

United States Court of Appeals, Ninth Circuit.

Argued & Submitted Nov. 14, 2006.

Filed April 6, 2007.

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

Brent T. Robinson, Esq., Ling, Nielsen & Robinson, Rupert, ID, for Debtors.

Kelly Greene Mcconnell, Esq., Givens Pursley LLP, Boise, ID, for Appellee.

Michele M. Mansfield, U.S. Department of Justice Civil Division, Federal Programs Branch, Washington, DC, Jeffrey G. Howe, AUSA, U.S. Dept. of Justice Washington Group Central Plaza, Boise, ID, for Trustee–Appellee.

Before: FERGUSON, O'SCANNLAIN, and FISHER, Circuit Judges. —

MEMORANDUM *

This memorandum disposition resolves the remaining issues in the Chapter 11

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

bankruptcy case of Jim and Patricia Wiersma ("Debtors") following our published opinion on the jurisdictional issue in *Wiersma v. Bank of the West (In re Wiersma)*, 483 F.3d 933 (9th Cir.2007).

Because Debtors' appeal of the Secured Status Order was untimely, we lack jurisdiction to review the Order. We address Debtors' remaining claims below and affirm the Bankruptcy Appellate Panel ("BAP").

## I. Mootness of the Settlement Agreement

Mootness is a jurisdictional issue stemming from the case-or-controversy requirement of Article III, § 2 of the U.S. Constitution. *DaimlerChrysler Corp. v. Cuno*, —— U.S. ——, 126 S.Ct. 1854, 1867, 164 L.Ed.2d 589 (2006) ("The doctrine[ ] of mootness ... originate[s] in Article III's 'case' or 'controversy' language, no less than standing does."). Where it is "impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal is moot and must be dismissed." *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1000 (9th Cir.2004) (quotations omitted). However, "an appeal is not moot if the court can fashion some form of meaningful relief." *Id.*

Debtors argue that the bankruptcy court's Order Approving Settlement should be invalidated because the court erred when it approved the Gietzen settlement for cash. They claim the parties had discussed a settlement for cows instead.[1]

■ This court cannot reach that issue because the settlement has already been agreed to by the parties, submitted to and approved by the bankruptcy court, and

fully consummated. The bankruptcy court stated:

> ■ appears that the Gietzen settlement has now been completely consummated and effected.... Gietzen Electric and its insurers have, as far as the Court understands, paid the full amount of the settlement monies and those funds have been distributed to the debtors. I think under these circumstances it would be clearly inappropriate at this time to attempt to undo that settlement.

Debtors have provided no evidence that these factual conclusions regarding the administration of the settlement are clearly erroneous. We must therefore adopt these factual findings and agree with the bankruptcy court and the BAP that there is no longer any meaningful relief to be had.

Furthermore, because the bankruptcy case as a whole was properly dismissed, as discussed below, the bankruptcy court's approval of the settlement is now moot. *Wiersma v. O.H. Kruse Grain & Milling*, 324 B.R. 92, 110 (9th Cir.BAP. 2005).

## II. Refusal to Confirm the Second Amended Plan

The requirements for confirmation of a proposed plan of reorganization are set forth in 11 U.S.C. § 1129 (2006). There are two requirements relevant to the present case: the feasibility requirement of § 1129(a)(11) and the indubitable equivalence requirement of § 1129(b)(2)(A).

### Feasibility

■ Under § 1129(a)(11), the bankruptcy court shall confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the

---

1. The settlement agreement, signed by Debtors, clearly indicates the settlement is for cash.

debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." This section "requires a determination regarding [the] feasibility of the plan." S.Rep. No. 95–989, at 128 (1978).

The proponents of a Chapter 11 plan must show that the plan "has a reasonable probability of success," *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir.1986), and is more than a "visionary scheme[ ]." *In re Pizza of Haw., Inc.*, 761 F.2d 1374, 1382 (9th Cir.1985) (quotations omitted). However, "[t]he prospect of financial uncertainty does not defeat plan confirmation on feasibility grounds since a guarantee of the future is not required. The mere potential for failure of the plan is insufficient to disprove feasibility." *Mutual Life Ins. Co. v. Patrician St. Joseph Partners, Ltd. P'ship (In re Patrician St. Joseph Partners Ltd. P'ship)*, 169 B.R. 669, 674 (D.Ariz.1994) (citation omitted). The debtor must demonstrate to the bankruptcy court by a preponderance of the evidence that the plan meets these requirements. *Liberty Nat'l Enters. v. Ambanc La Mesa Ltd. P'shp (In re Ambanc La Mesa Ltd. P'shp)*, 115 F.3d 650, 653 (9th Cir.1997).

In this case, Debtors proposed their Second Amended Plan for confirmation in November 2002. The plan involved purchasing cows in Georgia, where Debtors would move and then lease an operating dairy for $10,000 per month. They presented the testimony of Bob Matlick, a financial consultant for dairy clients in the Western United States. Matlick testified extensively about the specifics of dairy operations and economics in the Western and Southeastern United States.

Nevertheless, the bankruptcy court was left with serious doubts about the plan's feasibility. The court raised a host of concerns related to the fact that the new operation differed from Debtors' prior

dairy in "obvious[ ]" and "significant" ways. Debtors' Idaho dairy produced milk to be processed as cheese, whereas their proposed Georgia dairy would have sold liquid milk for direct consumption, a difference that "impacts the market price they will receive for their milk significantly." The court also recognized relevant climatic differences between the regions: Idaho is cold and dry, while Georgia is warm and wet.

Debtors lacked experience running a dairy in the southern climate and market. As a result, Debtors' predictions of success were highly speculative. As the bankruptcy court noted, "based upon the Court's years of experience with agricultural reorganizations, and in light of the evidence submitted at the hearing, the Court would remind the parties of what should be obvious: that farming in general, and the dairy business in particular, is predictably unpredictable."

Given the bankruptcy court's extensive hearings regarding feasibility and its reasoned conclusion that the Second Amended Plan did not have "a reasonable probability of success," *In re Acequia, Inc.*, 787 F.2d at 1364, this court cannot say it is left with "the definite and firm conviction that a mistake has been committed." *Latman v. Burdette*, 366 F.3d 774, 781 (9th Cir.2004).

*Indubitable Equivalence*

■ Section 1129 limits when a court may confirm a plan without the consent of creditors. A nonconsensual plan may be confirmed "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). A plan is "fair and equitable" if, with respect to a class of secured claims, it provides, *inter alia*, "for the realization by such holders of the indubitable equivalent of such claims."

§ 1129(b)(2)(A)(iii). In more basic terms, if a reorganization plan is to bind an unconsenting creditor, the creditor should hold at least the same value of claims under the plan as it would hold without the plan: an "indubitable equivalence."

In this case, Bank did not consent to the Second Amended Plan. To "cramdown" the plan, then, Debtors needed to show that the plan gave the Bank the indubitable equivalent of its present claim to the proceeds of the Gietzen lawsuit.

The Ninth Circuit has recognized two components of an indubitably equivalent substitute: It must both "compensate for present value" and "insure the safety of the principal." *Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Indus., Inc.)*, 734 F.2d 426, 433 (9th Cir. 1984) (abrogated on other grounds). "To the extent a debtor seeks to alter the collateral securing a creditor's loan, providing the 'indubitable equivalent' requires that the substitute collateral not increase the creditor's risk exposure." *Arnold & Baker Farms v. United States (In re Arnold & Baker Farms)*, 85 F.3d 1415, 1422 (9th Cir.1996) (citation omitted).

Debtors contend that Bank had only an interest in cows under the security agreement and that Bank would maintain that interest in cows under the proposed plan; this, they contend, is an indubitable equivalence. After the Gietzen settlement and the Secured Status Order, however, Bank had a secured interest in the cash proceeds of the settlement. While Bank's present claim is for $1.6 million cash, the proposed plan would spend $1.4 million of that cash on 800 cows. *Wiersma*, 324 B.R. at 112. For all the reasons discussed above with regard to feasibility, the plan was uncertain to succeed. As the BAP recognized, "Bank would be required to assume all of the risk of loss to the cows, including their wellbeing, sickness, and death." *Id.* The plan neither compensated Bank for the present value of its cash claim, nor did it insure the safety of the principal. *See In re Am. Mariner Indus., Inc.*, 734 F.2d at 433. Thus, the Second Amended Plan did not offer Bank the indubitable equivalence of its secured claim.

### III. Dismissal of the Bankruptcy Case

■ Chapter 11 U.S.C. § 1112(b) allows a bankruptcy court to dismiss a Chapter 11 case for cause. At the time the bankruptcy court dismissed Debtors' case, cause included "inability to effectuate a plan" and "denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or modification of a plan." 11 U.S.C. § 1112(b)(2), (b)(5) (2005), *amended by* 11 U.S.C. § 1112 (2006).

In this case, Debtors filed four plans over the course of a year and a half. None of the plans were sufficiently crafted to gain the consent of Bank or to justify a nonconsensual confirmation, despite the bankruptcy court's extensive explanations of its concerns with each plan. The U.S. Trustee moved to dismiss the case in February 2003, but the court reserved ruling on the motion to give Debtors extra time to try to negotiate a consensual plan. Debtors proposed a Third Amended Plan which attempted to address the court's concerns but again fell short.

The Third Amended Plan contained the many of the same feasibility problems of the Second Amended Plan. The court remained concerned that Debtors wanted to "start up a brand new substantial business" far from Idaho rather than trying "to save an existing operation through reorganization." The court noted that the plan would "continue to be burdened by the extremely high levels of debt service." It expressed "concern[ ] that the debtors will not be able to weather a significant downturn in the market" and that they would "have no breathing room at all."

The court stated Debtors would "have precious little equity in their new operation" and that "[n]early all the risks of failure would be born by the creditors." The court noted that Debtors had "only a small amount of working capital ... [which] isn't much of a cushion."

Because proceeding to formal confirmation hearings for the Third Amended Plan would have been futile, the bankruptcy court granted the U.S. Trustee's motion to dismiss the case for cause.

Debtors were given ample opportunity to propose a confirmable plan. The bankruptcy court did not abuse its discretion in dismissing the case for cause after nineteen months and four unconfirmed plans.

For the foregoing reasons, the BAP's holdings on mootness, confirmation, and dismissal are **AFFIRMED.**

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.