ALARCON, Circuit Judge:
 

 Eli Kenneth Mellor and Lisa Mellor (the Mellors) seek reversal of the decision of the Bankruptcy Appellate Panel which upheld the bankruptcy court’s annulment of the automatic stay.
 

 The bankruptcy court held that relief from the automatic stay of any creditor action against the debtor's estate was proper in this matter because the facts showed that the interest of Raymond G. Pistole and Raymond L. Bragg (the sellers) in the debt- or’s residence (the Upland residence) was inadequately protected. We must decide whether the bankruptcy court may consider junior encumbrances in determining whether a debtor’s estate provides adequate protection for a senior lien. It is our view that the bankruptcy court erred in considering the amount of the junior en-
 
 *1398
 
 cumbranees in granting relief from the automatic stay. Accordingly, we must reverse the judgment of the Bankruptcy Appellate Panel.
 

 PERTINENT FACTS
 

 Raymond G. Pistole (Pistole) purchased the Upland residence in June 1977. Part of the purchase price was paid out of the proceeds of a loan from the Weyerhauser Mortgage Corporation (Weyerhauser). The mortgage was in the amount of $68,450. Weyerhauser received a trust deed as security for the mortgage.
 

 Two months later on August 1, 1977, Pistole entered into a contract to sell the Upland residence to Lisa Williams (now known as Lisa Mellor) for $75,000. Under the terms of this land sale contract, Lisa Mellor was required to assume the mortgage payments owing to Weyerhauser (approximately $68,450) and to pay Pistole $1,000 as a down payment and an additional $5,500 in installments of at least $1,000 every six months, with the entire balance due in three years. She agreed to pay Pistole $703.05 a month which was to be forwarded to Weyerhauser. Pistole recorded the land sale agreement on December 8, 1977.
 

 On December 9, 1977, Pistole assigned his rights to the Upland residence under the land sale contract to Raymond G. Bragg (Bragg). Bragg received a grant deed to the Upland residence from Pistole, which was recorded on the same date.
 

 Weyerhauser did not receive the monthly payment due on the mortgage on November 1,1977. The Mellors accused Pistole of failing to forward the money they had paid to him for this payment. Pistole denied receiving the money for the November 1977 installment payment.
 

 As the result of this dispute, the Mellors did not send any money to Pistole to make the installment payments to Weyerhauser due December 1, 1977 and January 1, 1978.
 

 In January, 1978, Bragg filed an action in the Superior Court for the County of San Bernardino to cancel the land sale contract, to obtain possession of the Upland residence, and to quiet title.
 

 In March, 1978, the Mellors made a lump sum payment directly to Weyerhauser of the entire amount due on the delinquent monthly installments. Thereafter, until January, 1980, the Mellors paid the monthly installments directly to Weyerhauser. The Mellors did not make any of the installment payments owing to Pistole under the land sale contract.
 

 On April 11, 1980, a second trust deed was recorded against the Upland residence by AKOP, Inc., to secure a debt of $123,-278. This debt arose out of monies owed to a partnership between Eli Mellor and AKOP, Inc. The partnership was dissolved on March 20, 1980. Mellor assigned his fifty percent interest in the partnership and any equity he had in the Upland property to AKOP, Inc.
 

 On June 23, 1980, Weyerhauser declared a default on the mortgage because no payments were made after January, 1980.
 

 Between January 15, 1980 and September 3, 1980, five judgment liens totalling $11,494.18 were filed against the Upland residence.
 

 The Mellors filed a petition under Chapter 13 of the Bankruptcy Code on September 23, 1980. This matter was later converted by the Mellors to a joint Chapter 11 petition and a trustee for the debtors’ estate was appointed.
 

 On October 27, 1980, Weyerhauser instituted an adversary proceeding, pursuant to § 362(d), seeking termination of the automatic stay which went into effect upon the filing of the bankruptcy petition. The automatic stay arises by operation of law upon the filing of a petition for bankruptcy, and prevents creditors of the bankrupt from seeking to enforce any lien on the property of the estate. Weintraub and Resnick,
 
 Bankruptcy Law Manual,
 
 § 1.09[1] (1980). The bankruptcy court terminated the stay as requested by Weyerhauser on December 8, 1980. Neither Bragg nor Pistole joined in Weyerhauser’s petition. The Mellors did not attend the
 
 *1399
 
 December 8, 1980 proceedings. In granting Weyerhauser’s petition, the bankruptcy court ordered that “all restraining orders and stay orders issued herein are terminated.”
 

 On March 25, 1981, Bragg filed a motion for summary judgment in the state quiet title action. The Mellors opposed this motion solely on the ground that the state court lacked jurisdiction to proceed in an action concerning the Upland residence because it was still protected by the automatic stay. A hearing on the motion for a summary judgment was held on April 3, 1981. The state trial judge concluded that he had jurisdiction to proceed based on the December 8, 1980 order of the bankruptcy court which terminated the stay at Weyerhauser’s request. The state judge announced that he construed the Weyerhauser order as terminating “all restraining and stay orders issued with reference to this particular parcel and property.” The motion for summary judgment to quiet title against the Mellors was granted.
 
 [1]
 

 Weyerhauser gave notice that the Upland residence would be sold at a trustee’s sale on April 13, 1981. Prior to that date, Pistole cured the default by paying Weyer-hauser $12,460.06.
 

 On April 27, 1981, Pistole and Bragg filed a request to be relieved from the automatic stay. On June 1, 1981, the bankruptcy court issued an order purporting to annul the stay back to December 8, 1980. The bankruptcy judge expressly concluded that:
 

 [t]he purposes of the automatic stay, 11 U.S.C. Section 362(a) would not be served by allowing it to continue in effect beyond December 8, 1980 and by allowing it to have any effect on the Superior Court Judgment [in the quiet title action]...
 

 [[Image here]]
 

 The bankruptcy court found that the encumbrances of record against the Upland residence, at the time the Mellors filed their original petition in the bankruptcy court, totalled $199,801.05. The court included in this computation $125,278.00 owed to AKOP, Inc., and judgment liens totalling $9,823.35.
 

 The present value of the Upland residence was set at $105,000. Finally, the bankruptcy court found that “[n]either the Debtors nor the Estate have any realizable equity in their claimed interest in the real property...”
 

 Based on these findings, the bankruptcy court concluded that “[p]laintiffs’ interest in and to the subject real property lacks equity protection.” The bankruptcy court then ordered that the automatic stay “should be annulled to December 8, 1980”.
 

 The Bankruptcy Appellate Panel of the Ninth Circuit (the Appellate Panel) affirmed the annulment of the automatic stay.
 

 The Appellate Panel noted that the Mel-lors contended that “the appellees [Pistole and Bragg] should not be permitted to rely upon junior encumbrancers’ claims” in alleging a lack of “equity” cushion to protect the amount owing them.
 
 In re Mellor,
 
 31 B.R. 151 at 153 (Bkrtcy.App.1983). The Appellate Panel, however, failed to address this issue. The Appellate Panel held that the annulment of the automatic stay was proper under § 362(d).
 

 DISCUSSION
 

 Because this court is in as good a position as the Bankruptcy Appellate Panels to review the findings of a bankruptcy judge, in considering appeals from the Bankruptcy Appellate Panels
 
 In re Bialac,
 
 712 F.2d 426, 429 (9th Cir.1983), we apply the clearly erroneous standard to the bankruptcy court’s findings of fact.
 
 In re Visiting Home Services, Inc.,
 
 643 F.2d 1356, 1359 (9th Cir.1981). Conclusions of law are subject to
 
 de novo
 
 review.
 
 Id.
 

 The automatic stay is designed to afford a debtor a “breathing spell,” free from action by creditors against the petitioner’s
 
 *1400
 
 estate.
 
 La Jolla Mortgage Fund v. Rancho El Cajon Associates,
 
 18 B.R. 283, 286 (B.Ct.S.D.Cal.1982).
 

 The Bankruptcy Code also provides a procedure by which a creditor can seek relief from the continuation of the stay against his claim under 11 U.S.C. § 362(d).
 

 Section 362(d) provides as follows:
 

 On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
 

 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
 

 (2) with respect to a stay of an act against property, if—
 

 (A) the debtor does not have an equity in such property; and
 

 (B) such property is not necessary to an effective reorganization.
 

 The bankruptcy court annulled the automatic stay solely on the basis that the sellers’ “interest in and to the subject real estate lacks adequate protection.”
 

 The bankruptcy court failed to explain the legal or factual basis for this conclusion. It is true that the bankruptcy court found that the debtors and the estate did not have any “realizable equity” in the Upland residence. The fact that the debtor has no equity in the estate is not sufficient, standing alone, to grant relief from the automatic stay under section 362(d)(1).
 
 In re Suter,
 
 10 B.R. 471, 472 (B.Ct.E.D.Penn.1981).
 

 The sellers argue that since the first trust deed to Weyerhauser ($66,700) and the second trust deed to AKOP ($123,278) total more than $189,000, which exceeds the value of the residence ($105,000), their interest ($17,960.06) lacked adequate protection.
 

 While the term “adequate protection” is not defined in the Code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent.
 
 In re Curtis,
 
 9 B.R. 110, 111-112 (B.Ct.E.D.Penn.1981).
 

 The Mellors contend that the sellers are adequately protected by an “equity cushion.”
 
 [2]
 
 Although the existence of an equity cushion as a method of adequate protection is not specifically mentioned in § 361, it is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court.
 
 In re Curtis,
 
 9 B.R. at 112. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection.
 
 In re San Clemente Estates,
 
 5 B.R. 605, 610 (B.Ct.S.D.Cal.1980);
 
 In re Tucker,
 
 5 B.R. 180, 182 (B.Ct.S.D.N.Y.1980); 2 Collier on Bankruptcy, § 361.-02[3] at 361-9; (15th ed. 1979). A sufficient equity cushion has been found to exist although not a single mortgage payment had been made.
 
 In re Curtis,
 
 9 B.R. at 111.
 

 The bankruptcy court’s conclusion that the sellers’ interest lacked adequate protection was apparently based on its finding that “neither the Debtors nor the Estate have any realizable equity” in the residence. Findings of Fact # 14. However, in equating debtors' “equity” with “adequate protection” for the sellers, the bankruptcy court erroneously included the junior lien of AKOP, Inc. Although the existence of a junior lien may be relevant in determining “equity” under
 
 *1401
 
 § 362(d)(2), it cannot be considered in determining whether the interest of a senior lienholder is adequately protected.
 
 La Jolla Mortgage Fund,
 
 18 B.R. at 289. The claim of a junior lienholder cannot affect the claim of the holder of a perfected senior interest.
 
 See In re Wolford Enterprises, Inc.,
 
 11 B.R. 571, 574 (B.Ct.S.D.W.Virg.1981) [rejecting contention that defendant lacked equity due to second deed of trust; creditor failed to acknowledge that first deed has priority and that value of property was sufficient to satisfy that lien];
 
 In re Breuer,
 
 4 B.R. 499 (B.Ct.S.D.N.Y.1980) [holding there was a sufficient equity cushion for creditor holding first mortgage despite existance of four junior mortgages totalling more than market value of property]. Thus, in determining that adequate protection was not available for the sellers, the bankruptcy court failed to recognize that the sellers’ interest has priority over AKOP’s interest.
 
 [3]
 
 It also has priority over all of the judgment liens.
 
 [4]
 

 In the matter before us, the value of the sellers’ lien on the Upland residence is $17,960.06. This includes the amount still owed to Pistole pursuant to the original land sale contract, and $12,460.06 paid to Weyerhauser to stop the foreclosure proceedings. The bankruptcy court found that the value of the residence is $105,000; thus, there is an “equity cushion” to protect the sellers’ interest in the amount of $20,340 or approximately 20% of the total value. A 20% cushion has been held to be an adequate protection for a secured creditor.
 
 See In re McGowan,
 
 6 B.R. 241, 243 (B.Ct.E.D.Pa.1980) [holding a 10% cushion is sufficient to be adequate protection];
 
 In re Rogers Development Corp.,
 
 2 B.R. 679, 685 (B.Ct.E.D.Virg.1980) [court decided that an equity cushion of approximately 15% to 20% was sufficient adequate protection to the creditor, even though the debtors had no equity in the property.];
 
 In re Breuer,
 
 4 B.R. 499, 501 [creditor protected by equity cushion of $21,000 despite fact that debtor lacked equity in the property.].
 

 This difference in the amount owing to the senior creditors and the market value of the Upland residence forms the estate of the bankrupt and must be preserved for the benefit of all remaining junior creditors pro rata. By attempting to obtain a state court judgment quieting title to the Upland residence, the sellers sought to acquire a property worth $105,000, which greatly exceeds the amount owed to the sellers by the debtors after deducting the existing balance in the Weyerhauser mortgage. The purpose of adequate protection under § 361 is to insure that the secured creditor receives in value essentially what he bargained for, not a windfall.
 
 See In re Curtis,
 
 9 B.R. at 112.
 

 The bankruptcy court’s finding that there was inadequate protection for the sellers’ secured interest was clearly erroneous.
 

 The order of the bankruptcy court must be reversed on an additional ground. To support an order granting relief under section 362(d)(2), the evidence must show that the property was not necessary for an effective reorganization. The facts presented show that the Upland residence may be necessary to protect the interests of junior
 
 *1402
 
 encumbrances, after deducting the amounts to be paid any legally cognizable secured creditors. The bankruptcy court failed to make any finding on this issue, as required by section 362(d)(2).
 

 CONCLUSION
 

 The evidence in this record shows that there was adequate protection for the secured interest of the sellers. The bankruptcy court erred as a matter of law in considering the amount owed to junior lien holders in assessing whether the value of the debtors’ estate afforded the secured creditors an adequate “equity cushion”. The bankruptcy court also erred in its implied finding that the Upland residence was unnecessary to effect a reorganization. Whatever remains after payment to any legitimate secured creditors will be a necessary part of the estate in order to provide some compensation to the remaining creditors in a pro rata basis.
 

 Because we have concluded that the Appellate Panel erroneously affirmed the order of the bankruptcy court granting relief from the automatic stay, although no showing was made that there was inadequate protection of the secured creditors’ interest, we do not reach the serious question which is presented where a bankruptcy court purports to annul an automatic stay in order to attempt retroactively to validate a void state court judgment.
 
 See Kalb v. Feuerstein,
 
 308 U.S. 433, 443, 60 S.Ct. 343, 348, 84 L.Ed. 370 (1940) (a post bankruptcy petition state court judgment affecting estate property is void and of no effect). Since, in the instant matter, the Appellate Panel’s decision construing the validity of an attempt to annul retroactively an automatic stay in order to avoid the rule of
 
 Kalb v. Feuerstein
 
 was based on a faulty factual and legal premise, the decision appealed from should not be given any prece-dential effect.
 

 REVERSED.
 

 [1]
 

 . The summary judgment was affirmed by the California Court of Appeal on May 24, 1983. In so ruling, the court relied upon the June 1, 1981 action of the Bankruptcy Court retroactively annulling the automatic stay.
 

 [2]
 

 . "Equity cushion" has been defined as the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect.
 
 In re Roane,
 
 8 B.R. 997, 1000 (B.Ct.E.D.Pa.1981),
 
 aff’d,
 
 14 B.R. 542 (D.C.E.D.Pa.1981). "Equity," as opposed to "equity cushion," is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors.
 
 La Jolla Mortgage Fund,
 
 18 B.R. at 287.
 

 [3]
 

 . Priorities among several interests in real property are determined by the recording date of the documents evidencing the respective interests. 2 H. Miller and M. Starr,
 
 Current Law of California Real Estate,
 
 § 11:3 at 9; 3 Witkin,
 
 Summary of California Law
 
 (8th ed.), Real Property § 153 at 1894. Pistole recorded the land sale contract with Lisa Mellor on December 8, 1977, thus providing AKOP with constructive notice of his claim prior to Mellor's assignment of the second deed of trust on March 20, 1980. See
 
 Cal.Civil Code
 
 § 1213. The parties do not question the fact that AKOP’s interest is subordinate to that of the sellers.
 

 [4]
 

 . A judgment lien creditor obtains priority from the date the abstract of judgment is recorded against interests
 
 subsequently
 
 created in the property.
 
 Cal.Govt.Code
 
 § 27326. However, a judgment lien creditor is not a bona fide purchaser, and therefore is subject to all prior interests in the property, whether known or unknown, recorded or unrecorded.
 
 20th Century Plumbing Co., Inc. v. Sfregola,
 
 126 Cal.App.3d 851, 854, 179 Cal.Rptr. 144 (1981). The judgment liens against the Upland property were each recorded in 1980, and do not affect the seller's antecedent interest which was recorded in late 1977.