**In re SUN VALLEY RANCHES, INC.,
Debtor in Possession.**

**Bankruptcy No. 83–00854.**

United States Bankruptcy Court,
D. Idaho.

Oct. 24, 1984.

Steven A. Adamson and Henry McQuade, Adamson, Young & McQuade, Nampa, Idaho, for debtor.

Dale G. Higer, Eberle, Berlin, Kading, Turnbow & Gillespie, Chartered, Boise, Idaho, for The Equitable Life Assurance Society of the United States.

## MEMORANDUM DECISION AND ORDER

MIKEL H. WILLIAMS, United States Magistrate.

Equitable Life Assurance Society (Equitable Life) requests modification of the automatic stay provided by 11 U.S.C. § 362. Equitable seeks to begin a judicial foreclosure of its mortgage which encumbers real property owned by the chapter 11 debtor, Sun Valley Ranches, Inc. (SVR). SVR argues that Equitable Life is precluded from bringing this motion because of the res judicata effect of an earlier decision denying Equitable Life's previous motion to lift stay. I conclude that Equitable Life may properly bring a second motion to lift stay. I also conclude that its motion will be denied because it is still adequately protected.

In *In re Sun Valley Ranches, Inc.*, 84 I.B.C.R. 53, 38 B.R. 595 (Bankr.D.Idaho 1984), Judge Young denied Equitable Life's previous motion to lift stay. He found that Equitable Life's collateral had a value of $2,650,000.00, its indebtedness was $1,301,-308.00, and that Equitable Life had an equity cushion of $1,348.692. *Id.* at 57, 38 B.R. 595. He concluded that Equitable Life was not entitled to compensation for delay in foreclosing on its collateral or for its opportunity cost, i.e. loss of income it would have received if it had sold the collateral and invested the proceeds. *Id.* at 54–55, 38 B.R. 595. Judge Young cited *In re American Mariner Industries, Inc.*, 27 B.R. 1004, 10 B.C.D. 281, 8 C.B.C.2d 308 (Bankr. 9th Cir.1983), in support of his conclusion, referring to that decision as "the binding authority in this circuit." 84 I.B.C.R. at 55, 38 B.R. 595. The Ninth Circuit Court of Appeals reversed that decision, 734 F.2d 426 (9th Cir.1984), holding that an undersecured creditor "is entitled to compensation for the delay in enforcing its rights [to take possession of and sell collateral on the debtor's default] during the interim between the petition and confirmation of the plan." 734 F.2d at 435 (footnote omitted.). In light of this decision, Equitable Life again requests lift of the stay, or compensation for the delay in enforcing its rights to the collateral.

■ Equitable Life is not precluded from moving a second time to lift the stay. There is no statutory language to imply that result. To hold that a secured creditor is precluded from moving to lift the stay a second time after being denied relief on an earlier motion to lift stay could leave a creditor inadequately protected over time. *E.g. In re Carson*, 34 B.R. 502 (D.Kansas 1983).

Equitable Life's reliance on *American Mariner* is misplaced. That decision analyzed the effect of § 362, which allows relief from the stay for cause, including lack of adequate protection, and § 361, which illustrates several means of providing adequate protection, on an undersecured creditor. The *American Mariner* court stated that § 361 provides, in both subsections 1 and 2, "for adequate protection of '*an interest of an entity* in property ... to the extent that the stay ... results in a decrease in *the value of such entity's interest* in such property.'" (emphasis added by the *American Mariner* court). 734 F.2d at 430. Section 361(3) provides that "adequate protection may be provided by ... granting such other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." The *American Mariner* court concluded that § 361(1) and (2) "by their own terms compensate for 'a decrease in the value' of the secured creditor's interest," while the "indubitable equivalent" language of § 361(3) "at least encourages if not requires a present value analysis under Section 361." 734 F.2d at 432.

The *American Mariner* court quoted Judge Learned Hand's opinion in *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir.1935), and concluded that

[i]n its context, Judge Hand's interpretation of adequate protection emphasizes two factors. First, it suggests that to be "completely compensatory" adequate protection must compensate for present value, "that payment ten years hence is

not generally the equivalent of payment now." This protection [the debtors] provided in the form of interest. Second, adequate protection must insure the safety of the principal. This the [debtors] failed to do. Judge Hand concluded that the creditor's right "to get his money or at least the property" may be denied under a plan for reorganization only if the debtor provides "a substitute of the most indubitable equivalence." Such a substitute clearly must both compensate for present value and insure the safety of the principal. Significantly, however, Judge Hand added that "[n]o doubt less will be required to hold up the suit for a short time until the debtor shall have a chance to prepare." *Id.* at 943. This qualification, of course, reflects the absence under the former Bankruptcy Code of a statutory requirement for adequate protection during the stay, not to mention the absence of a requirement for an automatic stay. 734 F.2d at 433. The *American Mariner* court noted that "indubitable equivalence" appears in 11 U.S.C. § 1129(b)(2)(A)(iii) as an alternative to cash payments equal to the present value of an allowed claim, 11 U.S.C. § 1129(b)(2)(A)(i)(II), "and carries with it, from its original context in *Murel,* the requirement of compensation for present value." [citations omitted.] *Id.* The *American Mariner* court concluded that "Congress intended to adopt or at least encourage the same approach [a present value analysis] to adequate protection in sections 361 and 362." 734 F.2d at 434. The court then noted a split of authority as to whether a present value analysis was required. While the court did not explicitly endorse that line of authority requiring application of a present value analysis to § 361, it did conclude that the courts which had rejected a present value approach "accord insufficient weight to the language of the statute and the congressional goal of affording the secured creditor the benefit of its bargain." 734 F.2d at 434–5.

However, the conclusion of the *American Mariner* court seems to go beyond requiring a present value analysis. It stated that the parties bargain for "the secured creditor's right to take possession of and sell collateral on the debtor's default" and that right "has substantial measurable value." 734 F.2d at 435. The court stated that the delay in enforcing that right is a windfall to the debtor and its unsecured creditors and that sections 361 and 362 were designed to prevent such a windfall. It held that the undersecured creditor there was "entitled to compensation for the delay in enforcing its rights during the interim between the petition and confirmation of the plan ... to provide the creditor with the value of his bargained for rights." (footnotes omitted). *Id.*

After reading the court's conclusion and holding in light of its analysis, I conclude that the court intended only to provide an *undersecured* creditor with adequate protection similar to that given to oversecured creditors under § 506(b). Because the undersecured creditor does not have an equity cushion in its collateral, payments may be necessary. However, the *American Mariner* court stated that making monthly payments "is one method of providing adequate protection but by no means the only method available to the debtor. Consistent with the policies behind sections 361 and 362, the debtor should be permitted maximum flexibility in structuring a proposal for adequate protection." 734 F.2d at 435. In contrast, the equity cushion which is available to an oversecured creditor both compensates that creditor for the present value of its interest in the collateral and insures the safety of its principal, thus providing adequate protection.

This conclusion is reinforced by *In re Mellor,* 734 F.2d 1396 (9th Cir.1984), an appeal decided shortly after *American Mariner* by a panel which included a member of the *American Mariner* panel. The *Mellor* court reversed a bankruptcy court decision which had terminated the § 362 stay because the seller's interest in the property was not adequately protected. The *Mellor* court noted that an equity cushion of $20,000.00, approximately 20 percent

of the value of the residence, protected the senior lienholder and the seller. The *Mellor* court noted that an equity cushion "is the classic form of protection for a secured debt justifying the restraint of lien enforcement." 734 F.2d at 1400. It concluded that the sellers' secured interest was adequately protected and that the stay should not be terminated.

*Mellor* and *American Mariner*, taken together, stand for the proposition that both undersecured and oversecured creditors are to be given adequate protection. However, *American Mariner* does *not* require that adequate protection take the form of cash payments; that is simply one option available to the debtor. Where adequate protection exists in the form of an equity cushion, the secured creditor is not entitled to anything more.

■ In this case, Equitable Life now has a senior lien of about $1,300,000.00 which encumbers property valued at $2,650,-000.00. Equitable Life has an equity cushion of about $1,348,000.00. Pursuant to § 506(b), interest which is accruing on Equitable Life's debt is allowed to Equitable Life. I conclude that Equitable Life is adequately protected by its equity cushion and is not entitled to anything more. Therefore, the stay will not be lifted.

IT IS SO ORDERED.