In re **WOODBRANCH ENERGY PLAZA ONE, LTD.**, a Texas Limited Partnership, Etc.

In re **WOODBRANCH ENERGY PLAZA SIX, LTD.**, a Texas Limited Partnership, Etc.

**Bankruptcy Nos. 84–4601–H2–5, 84–4602–H2–5.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Nov. 8, 1984.

Michael Rosenthal, Houston, Tex., for Plaza Six, Ltd., A Texas Limited Partnership, Etc. Woodbranch Energy Plaza One, Ltd., and Woodbranch Energy Plaza Six, Ltd.

Thomas J. Perich, Andrews & Kurth, Houston, Tex., for InterFirst Bank—Houston, N.A.

Henry Kollenberg, Schlanger, Cook, Cohn & Mills, Houston, Tex., for Westgron XVI, B.V.

## MEMORANDUM OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

CAME ON for consideration the motion to lift the automatic stay filed by InterFirst Bank—Houston, N.A., hereinafter referred to as InterFirst, in the above captioned cases which have been consolidated for administration; responses filed by the Debtors, Woodbranch Energy Plaza One, Ltd., and Woodbranch Energy Plaza Six, Ltd.; response filed by secured creditor, Westgron XVI, B.V., hereinafter referred to as Westgron; all parties being represented by their respective attorneys of record; on proof in Open Court; and the Court having heard and considered same, finds as follows, to-wit:

### I.

InterFirst is owed the principal sum of $22,000,000.00, secured by deeds of trust encumbering both Woodbranch Energy Plaza One and Woodbranch Energy Plaza Six, two office buildings located in Houston, Texas. This indebtedness is represented by two promissory notes which accrue interest at the rate of $8,403.00, per day or $260,486.00, per month, calculated at the

rate of 13.75 percent per annum. Effective the date of this hearing, October 23, 1984, interest had accrued in the total sum of $979,305.56, representing a total indebtedness owed to InterFirst in the sum of $22,-979,305.56.

## II.

Westgron, the secured creditor that initiated these two involuntary bankruptcy cases, holds, according to its petition allegations, liens against both buildings as follows:

A. Woodbranch Energy Plaza One (2.3697 acres—three promissory notes)

|  |  |
|---|---|
|  | $2,550,000.00 |
|  | 500,000.00 |
|  | 210,000.00 |
|  | $3,260,000.00 |

B. Woodbranch Energy Plaza Six (2.5451 acres—three promissory notes)

|  |  |
|---|---|
|  | $2,650,000.00 |
|  | 500,000.00 |
|  | 215,000.00 |
|  | $3,365,000.00 |

| Total indebtedness | $6,625,000.00 |
|---|---|

Westgron has acknowledged the prior lien of InterFirst on Woodbranch Energy Plaza One in the sum of $11,750,000.00, and on Woodbranch Energy Plaza Six in the sum of $10,250,000.00, or the aforementioned total of $22,000,000.00. The aggregate principal value of the liens, exclusive of accruing interest, is therefore the sum of $28,625,000.00. Westgron alleged in each of its petitions that the amount owing as a result of the various debts exceeded the value of the collateral by an amount of at least $5,000.00 as to each building. However, subsequent to the consent of the Debtors to bankruptcy adjudications, these allegations were recanted in the Westgron response to the motion of InterFirst to lift the automatic stay.

## III.

InterFirst and the Debtors presented expert testimony concerning the value of the two office buildings. The appraisals are summarized as follows:

A. InterFirst—Trahan and Partners
  i. Woodbranch Energy Plaza One:

| Value Indication Via Cost Approach | — $ 9,870,000.00 |
|---|---|
| Value Indication Via Income Approach | — $10,300,000.00 |
| Value Indication Via Discounted Cash Flow Analysis | — $10,550,000.00 |
| Value Indication Via Market Data Approach | — $10,000,000.00 |

  ii. Woodbranch Energy Plaza Six:

| Value Indication Via Cost Approach | —$ 8,125,000.00 |
|---|---|
| Value Indication Via Income Approach | —$ 8,700,000.00 |
| Value Indication Via Discounted Cash Flow Analysis | —$ 8,300,000.00 |
| Value Indication Via Market Data Approach | —$ 8,440,000.00 |

Using the discounted cash flow analysis approach, which both experts agreed was an appropriate appraisal methodology, the total value for the two buildings would be $18,850,000.00.

B. Debtors—Luedemann and Associates
  i. Woodbranch Energy Plaza One:

| Fair Market Value Approach | — $14,272,000.00 |
|---|---|
| Income Approach | — $14,131,550.00 |

  ii. Woodbranch Energy Plaza Six:

| Fair Market Value Approach | — $12,568,000.00 |
|---|---|
| Income Approach | — $11,695,700.00 |

The total value of the two buildings utilizing the higher fair market value approach would be $26,840,000.00.

Although there was evidence presented at the hearing concerning other appraisals of the subject buildings, one of which was undertaken prior to construction utilizing occupancy rate projections that have proven unreliable, this Court is primarily concerned with the appraisal conclusions reflected hereinabove. Consequently, the appraisal testimony has raised the classic question for the fact finder to resolve— which of the two witnesses, both of whom were qualified as experts, has presented the more credible evidence?

## IV.

Although the more favorable appraisal of the buildings, provided by Luedemann, exceeds the total debt owed InterFirst at the present time, the value does not exceed the total secured debt, even excluding the rapidly accruing interest. Because Westgron holds a subordinate lien position to InterFirst, it is now resisting the efforts of InterFirst to have the automatic stay lifted. In rendering a decision concerning the

stay, should this Court consider the total debt encumbering the collateral or just the amount owed to InterFirst? The pertinent Bankruptcy Code section, 11 U.S.C. § 362(d), provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or—

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

■ A recent case dealing with the mechanical processes of 11 U.S.C. § 362(d) is *In Re: Mellor,* 734 F.2d 1396 (CA 9th Cir. 1984). The *Mellor* decision correctly holds that the value of a junior lien should not be considered in reaching a decision under § 362(d)(1) as to whether a senior lienholder is adequately protected. However, at the same time, when considering whether the debtor has equity in the property, § 362(d)(2)(A), all debt encumbering the property should be considered.

"... Although the existence of a junior lien may be relevant in determining "equity" under section 362(d)(2), it cannot be considered in determining whether the interest of a senior lienholder is adequately protected ...."

*In Re: Mellor,* supra, at pages 1400 and 1401.

■ An analysis of § 362(d) reveals two avenues, which are not mutually dependent, to provide relief from the automatic stay found in § 362(a). The first is for cause, including the lack of adequate protection. The second, with respect to a stay of an act against property, becomes available when there is no equity in the property *and* the property is not necessary for an effective reorganization. In *Mellor,* the Bankruptcy Court provided relief from the automatic stay on the premise that the creditors were not adequately protected under § 362(d)(1), while at the same time considering the total amount of the debts encumbering the property, rather than just that owing to the senior secured creditors who had requested relief from the stay. The reversal by the Ninth Circuit was predicated on the reasoning that although the debtor had no equity in the property, considering the total amount of secured obligations, standing alone, lack of equity was not sufficient to grant relief from the automatic stay pursuant to § 362(d)(1). The case also clearly indicated that for purposes of meeting the test of § 362(d)(2)(A), that all debts encumbering the property may be considered, but that before relief could be granted from the automatic stay that the provisions of § 362(d)(2)(B) must additionally be met. In essence, if the automatic stay is to be lifted because of a lack of adequate protection, considering the factual circumstances in the case before this Court, only the InterFirst indebtedness should be considered. However, if the case is to be decided under § 362(d)(2) the debts owed to both InterFirst and Westgron may be considered in determining the Debtors' lack of equity, but this must be coupled with the additional finding that the properties are not necessary for the Debtors' effective reorganization. See *In Re: Shriver,* 33 B.R. 176 (Bkrtcy. ND Oh.1983); *In Re: McCall,* 25 B.R. 199 (Bkrtcy.Pa.1982); and *La Jolla Mortgage Fund v. Rancho El. Cajon Associates,* 18 B.R. 283 (Bkrtcy. Ca.1982).

V.

If the Traham appraisal were accepted by the Court, there would be a lack of adequate protection as to the debts owed InterFirst and the automatic stay should be lifted pursuant to § 362(d)(1). On the other hand, if the Luedemann appraisal were accepted by this Court, the resulting "equity cushion" could conceivably constitute adequate protection for InterFirst for a relatively limited time span. See *In Re: Mel-*

lor, supra, page 1400, and *In Re: San Clemente Estates*, 5 B.R. 605 (Bkrtcy.SD Ca.1980). This "equity cushion", however, would be devoured totally in less than one year by the accruing interest alone, not to mention the accumulation of other fixed costs, taxes, and depreciation.

█ Considering again the Luedemann appraisal for purposes of argument, as well as, the total debt owed to both InterFirst and Westgron, there is clearly no equity in the properties for the benefit of the Debtors or the bankrupt estates as contemplated in § 362(d)(2)(A). Consequently, this Court is compelled to comment on the necessity of these properties for the Debtors' effective reorganization as contemplated in § 362(d)(2)(B). From the credible evidence, it is apparent that the market for leasing office space in the Houston, Texas, area is extremely "soft" at this time. A miraculous recovery in this market in the foreseeable future does not appear to be in the forecast. Woodbranch Energy Plaza One is currently 76% occupied, while Woodbranch Energy Plaza Six is totally vacant. Extensive expenditures would be required to render both of these buildings fully tenantable.

Casting a foreboding shadow on the ability of the Debtors to generate meaningful income from these buildings is the amount of rent concessions which must be granted to recruit potential tenants. This condition has reached astonishing proportions. For example, the proof indicated that it was not an uncommon practice to concede to the tenant eighteen months to twenty-four months free rent on a five-year lease. Although the magnitude of this problem *may* be improving over the long run, equity will not permit the Debtors in this case to enjoy the commodity of time while their creditors are held at bay uncompensated. The Debtors, from all indications, do not have the financial resources to finish these properties to realize a high percentage of occupancy. Coupling this factor with the inability to receive an immediate steady flow of income, brought on by the rental concession predicament, the Court finds that the Debtors' prospects for reorganization are nil. Although these buildings are the only assets of the separate Chapter 11 cases, if there can be no effective reorganization, they no longer are considered necessary. Thus, the joint tests required by § 362(d)(2)(A) and § 362(d)(2)(B) have been met. The conclusion therefore becomes inescapable that the automatic stay provided by § 362(a) should be lifted in order to permit InterFirst to prosecute and enforce its legal remedies and/or rights to the properties securing the indebtednesses existing in its favor.

### VI.

█ Although the above and foregoing conclusion was based on the Luedemann appraisal which is more favorable to the position of the Debtors, this Court would also be compelled, even utilizing the same evaluation, to find a lack of adequate protection of the interest of InterFirst in the two properties. The margin between the Luedemann appraisal and the InterFirst debt is narrowing rapidly. In fact, when both appraisals are carefully reviewed and refined, this Court is of the opinion that even now there is *no* reasonable adequate protection available for InterFirst. The Court is not attempting to second guess the experts, but following a thorough examination of both appraisals, there appear to be several subjective factors and assumptions which if adjusted would significantly modify the final values. Regardless, this Court concludes additionally that the automatic stay in this case should be lifted for cause, specifically including the lack of adequate protection of the InterFirst interest in the loan collateral pursuant to § 362(d)(1).

### VII.

That although this was a preliminary hearing on the InterFirst motion, the Court finds that there is no reasonable likelihood that the Debtors would prevail at a final hearing. (11 U.S.C. § 362(e)(1)).

An Order will be entered consistent with this Opinion.