K.K. HALL, Circuit Judge:
Shenandoah Federal Savings and Loan Association (“Shenandoah”), the principal creditor in a Chapter 7 bankruptcy proceeding, appeals from two orders of the district court that have been consolidated for purposes of this appeal. The district court permitted the trustee in bankruptcy to obtain additional credit by granting a senior lien on property of the estate pursuant to 11 U.S.C. § 364(d) and to sell certain obsolete or surplus property free of any existing liens. Shenandoah contends that these actions left its interest in the estate without “adequate protection” as required by 11 U.S.C. § 364(d). We disagree and affirm the decisions below.
I.
The Chapter 7 bankruptcy debtor, the Snowshoe Company (“Snowshoe”), is the principal owner of the Snowshoe Ski Resort located in Pocahontas County, West Virginia. Historically plagued with financial problems, Snowshoe is currently in its fourth bankruptcy proceeding. Only the last two proceedings are relevant to this appeal.
In July of 1982, Snowshoe borrowed $10 million from Shenandoah to finance improvements to the resort, pay off other indebtedness, and contribute to working capital. In August, 1982, Snowshoe borrowed an additional $1.75 million from Shenandoah to fund construction of a conference center at the resort. The loans to Snowshoe were secured by a first lien on Snowshoe’s real and personal property, subject only to a prior lien held by Charleston National Bank and certain purchase money liens on equipment and machinery of the resort.
In April, 1984, Shenandoah declared both of its prior loans in default. Facing a foreclosure as a result of the defaults, Snowshoe filed a petition for relief under Chapter 11 of the bankruptcy code listing liabilities of $13,515,545.85.
Several months after the bankruptcy petition was filed, a number of creditors, including Shenandoah, moved for the appointment of a trustee to manage the resort. A hearing was held before Judge John A. Kamlowsky, United States Bankruptcy Court for the Northern District of West Virginia, to determine whether the appointment of a trustee was appropriate.
During the hearing considerable dispute arose concerning the fair market value of the assets of Snowshoe. Various estimates or appraisals were offered ranging from *1087 $14.65 million to $31 million. The bankruptcy court concluded that the fair market value of the resort was substantially in excess of $19 million. In support of this conclusion, the court noted that in 1983, John N. Taylor, then Executive Vice-President of Shenandoah, had offered to purchase the resort for $2,000,000 in cash and the assumption of liabilities estimated to be between $15 and $17 million.
The amount actually owed by the debtor to Shenandoah was also contested at the hearing. Snowshoe contended that a substantial portion of its indebtedness to Shenandoah was subject to setoff in an unliqui-dated amount resulting from alleged fraudulent acts by Shenandoah. A separate action by Snowshoe asserting these claims is currently pending before the district court. The bankruptcy court ultimately determined that the number and seriousness of the issues existing between Shenandoah and Snowshoe required that resolution be sought outside the restraints of a proceeding in bankruptcy. The court, by order dated February 19, 1985, dismissed the Chapter 11 petition sua sponte. The order included Judge Kamlowsky’s findings on the value of the resort.
Snowshoe then filed a new Chapter 11 petition on March 15, 1985. Judge Kam-lowsky subsequently recused himself and on May 24, 1985, Judge Robert Maxwell of the United States District Court for the Northern District of West Virginia, converted the case to proceedings under Chapter 7 of the Bankruptcy Code. Michael L. Bray, appellee in this appeal, was appointed interim trustee.
At the time of his appointment, the trustee was directed by the district court to report whether continued operation of the debtor’s business was feasible. On June 17, 1985, the trustee reported that the resort would lose from 50% to 90% of its fair market value if it ceased operations. The trustee further stated that an additional $1.5 to $2 million would be necessary to fund the operation for the coming ski season. Shenandoah did not dispute the trustee’s conclusion that the resort’s value would suffer a severe diminution if it failed to operate.
The trustee subsequently filed an application to incur debt secured by a senior lien on the property of the estate pursuant to 11 U.S.C. § 364.[1] In support of his application, the trustee asserted that the existing value of the estate provided adequate protection for Shenandoah’s interest. He further maintained that, based upon his analysis of the resort’s operational history, he believed that the loan would be repaid by March, 1986. Shenandoah opposed the application. After a hearing, the district court concluded, as required by the statute, that the trustee was unable to obtain credit without granting a senior lien and that adequate protection existed to guarantee the existing lienholders the “indubitable equivalent” of their interests. The court, therefore, granted the trustee’s application[2] and subsequently granted a second *1088 application to sell surplus and obsolete equipment free of any creditor interest.
Shenandoah appeals.
II.
On appeal, Shenandoah contends that (1) the trustee’s efforts to obtain additional loans were insufficient to establish that credit was not available without granting the senior lien, and (2) the district court erred in concluding that adequate protection existed with respect to both the su-perpriority loan and the sale of surplus property. We see no merit in either of these contentions.
The record clearly indicates that the trustee contacted other financial institutions in the immediate geographic area and was unsuccessful. The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable. This is particularly true when, as the court determined here, time is of the essence in an effort to preserve a vulnerable seasonal enterprise. The district court found that the trustee had demonstrated by a good faith effort that credit was not available without the senior lien. We see no error in that determination.
Our conclusion is not undermined by Shenandoah’s suggestion on appeal that it stood ready to lend the additional funds without requiring the senior lien. It is clear from the record that Shenandoah’s offer was conditioned upon the trustee's acknowledgement of both the validity of Shenandoah’s claimed pre-petition lien and of the amount of its claimed pre-petition debt. Both of these factors are in dispute and, indeed, are the subject of ongoing litigation. We conclude that neither the trustee nor the court was required to consider this conditional offer as an indication that credit was available without the senior lien.
III.
The question of whether Shenandoah’s interest in the debtor’s property was adequately protected from the consequences of the superpriority loan and the sale of surplus property is a more complex issue but one that we find was also properly resolved by the district court. The Code states in section 361(3) that adequate protection may be provided by assuring a creditor of the “indubitable equivalent” of its interest in the estate. Although there is contrary authority in bankruptcy law,[3] we conclude that a judicial determination of such adequate protection is a question of fact rooted in measurements of value and the credibility of witnesses. See In re Martin, 761 F.2d 472 (8th Cir.1985); In re Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017 (11th Cir.1984). Therefore, unless the district court’s conclusion was “clearly erroneous,” its decision that Shenandoah was adequately protected must be affirmed. Anderson v. Bessemer City, N.C., — U.S. -, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).
Shenandoah seeks to avoid this rigorous standard of review by arguing that the district court committed an error of law when it held that adequate protection existed in a supposed equity cushion between the amount of Shenandoah’s interest and the value of the estate.[4] Shenandoah contends that in finding this cushion, the court failed to evaluate the estate independently as required by the Code and instead improperly treated the earlier evaluation reached by Judge Kamlowsky as res judicata. We disagree.
It is clear from a reading of section 506 of the Bankruptcy Code and its accompanying legislative history that estimates of value made during bankruptcy proceedings are “binding only for the purposes of the specific hearing and ... [do] not have a res *1089 judicata effect”[5] in subsequent hearings. Here, we do not find that the district court mechanically applied the valuation determined in the earlier proceeding in order to conclude that an equity cushion existed.[6] The court obviously considered and gave great weight to Judge Kamlowsky’s conclusion that the resort was worth substantially in excess of $19 million. Because that conclusion had been reached only five months earlier and was the product of an extensive inquiry, the district court was clearly correct in considering it as continuing evidence of value. The court did not, however, rely solely on Judge Kamlow-sky’s finding. It also considered a variety of other evidence, including the debtor’s schedules listing fair market value of assets at $35 million, financial statements from the two previous years showing assets of approximately $22 to $23 million, the trustee’s report of June 17, 1985, that estimated value between $12 to $35 million, and Shenandoah’s claim that the assets were worth only $14.65 million.
In February, 1985, Judge Kamlowsky found that the resort was worth substantially in excess of $19 million. In June, 1985, the district court concluded that the resort was still worth more than $19 million.[7] We find that the latter conclusion was the product of the independent evaluation required by the Code and not simply an application of res judicata. We emphasize that under the facts of this case in which the constraints of passing time weighed heavily, the court was not required to engage in a new battle of appraisers that could have fatally prolonged the proceedings and obviated any need for a new loan by rendering further operation of the resort impossible. We, therefore, hold that an equity cushion was properly determined.
Moreover, at the time that the trustee sought permission to borrow additional funds, he provided the court with detailed fiscal projections to support his contention that a superpriority loan could be repaid in one ski season. Shenandoah’s attempt on appeal to characterize those projections as “mere expectations” of the sort rejected by the bankruptcy court in In re St. Petersburg Hotel Associates, Ltd., 44 B.R. 944 (Bankr.M.D.Fla.1984), is not persuasive. In St. Petersburg, supra, the debtor sought permission to obtain a superpriority loan based on little more than his vaguely anticipated ability to repay within five years. In the present case the loan was sought by an experienced and respected trustee who based his belief that the loan would be repaid within one year on a detailed fiscal analysis of the resort’s operational profile. Predictions of any variety are never totally reliable but when they are made by a professional operating within his area of competence and supported by data, such predictions are worthy of some deference.[8] We, therefore, believe that the district court was entitled to consider the *1090 trustee’s economic projections as additional support for its conclusion that Shenandoah’s interest was adequately protected and would not be impaired by a superpriority loan.
We are aware that some courts have found that the existence of an equity cushion is sufficient to demonstrate adequate protection while others have held that such a cushion is part of the bargained for consideration and cannot in itself protect the secured creditor. Compare In re Mellor, 734 F.2d 1396, 10 C.B.C.2d 1353 (9th Cir. 1984), with In re Alyucan Interstate Corp., 12 B.R. 803 (Bankr.D.Utah 1981). Because we conclude that the district court’s determination of adequate protection for the purpose of allowing the superp-riority loan was supported by both an equity cushion and the well-reasoned financial analysis of the trustee, we need not decide if an equity cushion alone would constitute sufficient protection.[9]
IV.
In sum, the district court’s conclusion that Shenandoah’s interest in the bankruptcy estate was adequately protected from the consequences of both the superpriority loan and the sale of surplus equipment is a factual determination in which this Court finds no clear error. For the foregoing reasons, the orders of the district court are affirmed.
AFFIRMED.

. 11 U.S.C. § 364 provides, in pertinent part, as follows:
(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
(A) the trustee is unable to obtain such credit otherwise; and
(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

. Although the district court authorized the trustee to incur debt up to $2 million, the order also incorporated by reference the loan agreement with the lending institution, Community Bank & Trust (“CB & T”) of Fairmont, West Virginia. In that agreement, CB & T agreed to lend up to $1.5 million of which $1.39 million was actually obtained by the trustee. Shenandoah’s suggestion at oral argument that the portion of Judge Maxwell’s order allowing the trustee to obtain additional credit from CB & T without a hearing was an unlimited authorization is highly questionable. It seems clear that any additional credit the trustee would seek from CB & T would be subject to the $2 million limit in the court’s order. In any event, the trustee assured this Court at oral argument that not only are no further disbursements from CB & T envisioned but that the repayment process is also substantially in progress.

. See e.g., In re Philadelphia Consumer Discount Co., 37 B.R. 946 (E.D.Penn.1984), In re Schaller, 27 B.R. 959 (W.D.Wis.1983).

. Shenandoah has asserted that the debt owed to it at the time of the hearing was between $13 and $14 million. The district court determined that the resort was worth in excess of $19 million.

. See S.Rep. No. 95-989, 95 Cong.2d Sess. 54, reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 5840.

. This conclusion renders the cases on impermissible res judicata cited by Shenandoah, including Maryland National Industrial Finance Corp. v. The Vacuum Cleaner Corp. of America, 33 Bankr. 701 (Bankr.E.D.Pa.1984), inapposite.

. Although two efforts to sell the resort for $19 million by Shenandoah at foreclosure sales in April of 1985 were unavailing, this fact does not invalidate the district court’s judgment of value. The limited advertising requirements for a judicial sale under West Virginia law do not demand the level of buyer solicitation required to market an asset of this dimension. Furthermore, the effect on a potential buyer of Shenandoah's inability to sell the resort free of all existing liens cannot be determined.

. Information provided by the trustee in response to questions at oral argument strongly suggests that the projected repayment may occur as planned. Of the $1.39 million actually borrowed from CB & T over $400,000 has been repaid. The resort has a $300,000 receivable derived from credit card payments which is to be applied to the loan balance and will earn the right to certain customer deposits as time passes. Additionally, a substantial portion of the income producing season for a ski resort was still ahead at the time this appeal was argued. While it cannot be said with certainty that the trustee’s projections will be fully realized, it is clear that they were far more than "mere expectations.”

. With respect to the sale of surplus property, our conclusion that an equity cushion was properly determined fully resolves the issue against Shenandoah, which relies solely on that theory to support its claim of inadequate protection.