**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: DANA HOLLISTER, | No. 21-55380 |
| Debtor, | D.C. No. 2:18-bk-12429-NB |
| DANA HOLLISTER, | MEMORANDUM* |
| Petitioner-Appellant, | |
| v. | |
| BOBS, LLC; SELECT PORTFOLIO SERVICING, INC., | |
| Respondents-Appellees. | |

Appeal from the United States Bankruptcy Court
for the Central District of California
Neil W. Bason, Bankruptcy Judge, Presiding

Argued and Submitted November 18, 2021
Pasadena, California

Before: LINN,** BYBEE, and BENNETT, Circuit Judges.

Appellant Dana Hollister filed a financing motion seeking the bankruptcy

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Richard Linn, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

court's approval of a $7 million priming loan secured by real property, a unique estate called the Paramour. The loan would have subordinated the interests of certain lienholders with secured interests in the real property. Hollister needed to show that each such lienholder was adequately protected through a cash payment (which some were to receive), an additional or replacement lien, or other relief that would have resulted in the "realization by [each] such [lienholder] of the indubitable equivalent of such [lienholder's] interest in [the real] property." 11 U.S.C. §§ 361, 364(d). The court rejected Hollister's motion because it found the proposed priming loan did not provide Appellee Bobs, LLC (Bobs) with the "indubitable equivalent" of Bobs's interest in her property. The court also rejected Hollister's request for an evidentiary hearing. Hollister argues the court abused its discretion both in rejecting the priming loan and in refusing to conduct an evidentiary hearing. The court certified this appeal for our consideration. We authorize the direct appeal and affirm.[1] 28 U.S.C. § 158(d)(2)(A).

"The bankruptcy court's conclusions of law, including its interpretation of the

---

[1] Bobs's argument that we lack jurisdiction because the court did not issue a final order is meritless, as our jurisdiction arises under 28 U.S.C. § 158(d)(2)(A). We also find that the case is not moot. Although "the SGLC, Inc. financing offer has expired," Hollister attested that "a loan remains available today." If "a court can fashion *some* form of meaningful relief," even if it "may not be able to return the parties to the *status quo ante*," then the case is prevented "from being moot." *Church of Scientology v. United States*, 506 U.S. 9, 12–13 (1992). The certified legal question remains ripe for review: "Whether the 'too evident to be doubted' standard warrants denial of a proposed priming loan without any evidentiary hearing."

Bankruptcy Code, are reviewed de novo and its factual findings are reviewed for clear error." *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007). "We review for an abuse of discretion the bankruptcy court's decision not to conduct an evidentiary hearing." *In re Caviata Attached Homes, LLC*, 481 B.R. 34, 43 (B.A.P. 9th Cir. 2012).

Hollister first argues that the court abused its discretion by applying the definition of "indubitable equivalent" from the reorganization context of the Bankruptcy Code, 11 U.S.C. § 1129(b)(2)(A)(iii), to the same phrase in 11 U.S.C. § 361. Section 361 is the definitions section for § 364(d), which governs financing motions like the one here. Our court has held that Congress adopted "indubitable equivalent" in § 361 to include "language representing a strict approach to adequate protection" as it did when it adopted that language in § 1129. *In re Am. Mariner Indus., Inc.*, 734 F.2d 426, 434 (9th Cir. 1984). In *In re Arnold & Baker Farms*, we defined "indubitable" to mean "too evident to be doubted." 85 F.3d 1415, 1421 (9th Cir. 1996). This plain reading of the phrase extends to "its use elsewhere in the Bankruptcy Code." *Am. Mariner*, 734 F.2d at 432. Thus, the court correctly applied the definition of "indubitable equivalent" from the § 1129 context to § 361(3).[2]

---

[2] Hollister's argument that the court should have adhered to the "standard" set forth in *In re Mellor*, 734 F.2d 1396 (9th Cir. 1984), is unavailing. *Mellor* did not set a standard, but merely illustrated *one type* of "relief that provides the indubitable equivalent"—an equity cushion. *Id.* at 1400–01.

Hollister argues that the court should have afforded her an evidentiary hearing to resolve the material disputed facts related to adequate protection, and that the court "failed to perform its duty" to set the value of the Paramour with the aid of expert witness testimony. The Bankruptcy Code provides that the "[bankruptcy] court, after notice and a hearing, may authorize the obtaining of credit." 11 U.S.C. § 364(d)(1). "The phrase 'notice and a hearing' . . . does not mean that a hearing must be granted." *In re Blumer*, 66 B.R. 109, 113 (B.A.P. 9th Cir. 1986). Rather, "after notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). "The bankruptcy judge has considerable, albeit not unlimited, discretion in determining if the notice and a hearing requirement has been satisfied." *In re Nicholson*, 435 B.R. 622, 635 (B.A.P. 9th Cir. 2010) (quoting *In re Gonzalez-Ruiz*, 341 B.R. 371, 381 (B.A.P. 1st Cir. 2006)).

The court did not abuse its discretion in not conducting a hearing, as it reasonably determined that it had sufficient evidence to decide the priming motion. *See Blumer*, 66 B.R. at 113. Hollister's appraisals and calculations provided the court with "sufficient undisputed evidence . . . to issue its ruling without any further evidentiary hearing." *Caviata*, 481 B.R. at 46. Hollister had "the burden of proof on the issue of adequate protection." 11 U.S.C. § 364(d)(2).

The court did not err in finding that Hollister did not meet her burden to prove she had adequately protected Bobs's interest. The court did not need to set an exact value for this unique property to reach this conclusion because, among other reasons, Hollister's equity cushion calculations were erroneous. In *Mellor*, the equity cushion percentage was calculated by dividing the equity cushion by the value of the residence. 734 F.2d at 1401. Hollister correctly stated that Bobs's equity cushion "is equal to the fair market value of the Paramour less $22.35 million (the sum of $4.35 million, $7 million and $11 million [the superior lienholders' interests])." But she did not calculate Bobs's equity cushion percentage. Hollister tried to show the proposed adequate protection to Bobs with four hypothetical valuations in a table in her financing motion. One row of the table lists: $40 million value finding by the court; $19,338,400 equity above all liens and encumbrances; 175.80% adequate protection. Hollister's math is not immediately apparent.[3]

This presentation of the adequate protection percentage is misleading and erroneous. Hollister committed the very error this court examined in *Mellor*, in which "the bankruptcy erroneously included the junior lien" by "equating debtors' 'equity' with 'adequate protection' for the sellers." 734 F.2d at 1400; *see also id.* at

---

[3] We believe Hollister's calculations were: ($40 million value finding) – ($20,661,600 "secured debt burden," or the total debt owed to all secured lienholders) = $19,338,400 equity above all liens and encumbrances. ($19,338,400) / ($11 million Bobs lien) = 175.80% adequate protection for Bobs.

n.2 ("'Equity,' as opposed to 'equity cushion,' is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors."). The "equity above all liens and encumbrances" should have no part in the calculation of an equity cushion calculation. And Hollister erred by dividing the equity by Bobs's claim instead of by the value of the property. In short, Hollister presented an incorrect equity percentage, not Bobs's equity cushion percentage. Hollister thus failed to present Bobs's adequate protection.

The court correctly found that Hollister "failed to 'do the math'" because she simply did not submit an equity cushion calculation for Bobs. The court thus correctly entered judgment as a matter of law because Hollister did not meet her burden under § 364(d)(2). Furthermore, the court's "hypothetical" calculations persuade us that this financing motion *could not* adequately protect Bobs.[4] We therefore affirm the court's decision not to grant Hollister an evidentiary hearing before determining that she did not provide adequate protection to Bobs.[5]

---

[4] We agree with the court that Hollister's "failure to do the math is fatal to the Financing Motion." The court also conducted "hypothetical" calculations of the equity cushion "to illustrate the sorts of calculations that the Debtor has *not* shown, and to illustrate that Bobs easily *could be* adversely affected if the Financing Motion were granted." We reviewed the court's "illustrative" calculations and found them beneficial to our understanding of Ms. Hollister's errors. We see no abuse of discretion in the court's use of hypothetical equity cushion calculations.
[5] Hollister asks us to remand to a different bankruptcy judge, because of alleged bias. We reject her request as frivolous, as nothing in the record supports our removing the bankruptcy judge from this case.

**AFFIRMED.**