NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-19-1037-FSTa |
| RONALD MARTINEZ, | Bk. No.    2:17-bk-24424-NB |
| Debtor. | |
| RONALD MARTINEZ, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| WELLS FARGO BANK, N.A., | |
| Appellee. | |

Submitted Without Argument on September 26, 2019

Filed – October 8, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Neil W. Bason, Bankruptcy Judge, Presiding

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:     Moises A. Aviles of Aviles & Associates on the brief for
                 appellant Ronald Martinez.

_____

Before: FARIS, SPRAKER, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

Chapter 13[1] debtor Ronald Martinez fell behind on postpetition payments to appellee Wells Fargo Bank, N.A. ("Wells Fargo"), and the bankruptcy court required him to cure the postpetition default. On appeal, Mr. Martinez argues that Wells Fargo was barred from complaining about his missed payments because it did not object to plan confirmation. He also argues that he was current with payments because Wells Fargo misapplied certain of them.

Mr. Martinez's arguments are meritless. Accordingly, we AFFIRM.

## FACTUAL BACKGROUND[2]

### A.     Mr. Martinez's chapter 13 petition and plan

Mr. Martinez filed a chapter 13 petition. He scheduled residential real property in Pomona, California (the "Property"). He valued the Property at

_____

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.),* 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

$265,000 and scheduled three debts secured by the Property: (1) a first mortgage ("First Lien") in favor of Wells Fargo Home Mortgage totaling $89,545.97, (2) a home equity line of credit (the "Second Lien") in favor of Wells Fargo totaling $69,157.55, and (3) a lien ("Third Lien") in favor of the City of Pomona, Housing Division totaling $48,714.13.

Wells Fargo filed a timely proof of claim for $66,689.47 pertaining to the Second Lien. It represented that, as of the petition date, Mr. Martinez was $8,307.90 in arrears and had not made any payment since June 2016.

Mr. Martinez filed a series of chapter 13 plans. The plan that is at issue in this appeal dealt solely with the arrears under the Second Lien. That plan (the "Plan") proposed "cure and maintenance" of the Second Lien. He proposed to make his regular monthly contractual payments (the "maintenance payments") directly to Wells Fargo and to make sixty monthly payments of $138.47 (the "cure payments") to cure the $8,307.90 in prepetition arrears. Wells Fargo did not object to the Plan.

The bankruptcy court entered an order confirming the Plan ("Confirmation Order"). The Confirmation Order required Mr. Martinez to pay: $176.84 per month from the first through the fourth months; $153.70 in the fifth month; $154.70 in the sixth and seventh months; and $154.00 per month for the remainder of the Plan term. As is noted above, the Plan also required Mr. Martinez to make his maintenance payments.

Wells Fargo did not appeal the Confirmation Order.

**B.    Wells Fargo's motion for relief from stay**

Two months later, Wells Fargo filed a motion for relief from the automatic stay ("Stay Relief Motion"). It argued that its interest in the Property was not adequately protected under § 362(d)(1) because Mr. Martinez had failed to make the required maintenance payments. It identified a total postpetition delinquency of $3,485.61. It represented that it received Mr. Martinez's last payment on July 31, 2018 and applied it toward his January 2018 payment:

| Due date | Amount due | Payment date | Payment amount | |
|----------|-----------|--------------|----------------|---|
| 12/15/17 | $470.08 | 6/27/18 | $512.81 | |
| 1/15/18 | $494.85 | 7/31/18 | $508.84 | |
| 2/15/18 | $505.63 | | | |
| 3/15/18 | $486.55 | | | |
| 4/15/18 | $489.87 | | | |
| 5/15/18 | $501.10 | | | |
| 6/15/18 | $512.81 | | | |
| 7/15/18 | $508.84 | | | |
| 8/15/18 | $537.43 | | | |
| **Total** | **$4,507.26** | | **$1,021.65** | **$3,485.61** |

In response, Mr. Martinez represented that he was current on his First Lien, his Plan payments, and his maintenance payments. He alleged that a Wells Fargo employee told him that some of the maintenance payments went to the First Lien instead of the Second Lien. He also stated

4

that when he attempted to make the August 2018 maintenance payment on October 1, 2018, a Wells Fargo employee told him that Wells Fargo had closed the account for the Second Lien. He argued that it was not his fault if Wells Fargo misapplied his payments.

He listed his purported maintenance payments between April 2018 and September 2018, which were applied to either the First Lien or the Second Lien:

| Payment date | Amount | Paid to |
|---|---|---|
| 4/30/18 | $489.87 | First Lien |
| 5/30/18 | $501.10 | First Lien |
| 6/27/18 | $512.81 | Second Lien |
| 7/31/18 | $508.84 | Second Lien |
| 8/xx/18 | $537.43 | First Lien |
| 9/1/18 | $508.51 | First Lien |
| 9/27/18 | $486.55 | Second Lien |

He attached copies of the deposit receipts evidencing his payments.

At the hearing on the Stay Relief Motion, counsel for Wells Fargo pointed out that, although Mr. Martinez claimed that he timely made all of his maintenance payments, most of them were applied to his First Lien, as noted in the opposition. Counsel for Wells Fargo stated that, if Mr. Martinez intended to pay the Second Lien, Wells Fargo could redirect the payments, but it would likely result in a default on the First Lien. He

5

suggested that the court continue the hearing for thirty days to allow the attorneys to work out a solution. Mr. Martinez's counsel agreed to the continuance.

At the continued hearing, counsel for Wells Fargo said that Mr. Martinez's counsel had been unresponsive to his multiple communications regarding the application of Mr. Martinez's payments. He also stated, "Perhaps, Judge, most troubling is since we have filed our motion we have no payments for September, October and November and that is troubling." Counsel suggested that the court issue an adequate protection order whereby Mr. Martinez would make an initial payment of $1,500, followed by regular payments (in addition to his cure payments and maintenance payments) to cure his postpetition default on the maintenance payments.

Mr. Martinez's counsel apparently[3] said that Wells Fargo had refunded Mr. Martinez approximately $1,500 for the funds that were misapplied to the First Lien. He agreed to the terms of Wells Fargo's proposed adequate protection order.

The bankruptcy court explained to Mr. Martinez, "[Y]ou have the ability to make a payment of $1500 on or before December 1. And then starting December 14 you would not only be making your regular

---

[3] Mr. Martinez's counsel appeared by telephone; the connection was bad, so both the court and the transcriber had difficulty understanding him.

payments on whatever date they're regularly due, but you'd also be catching up on the – on the payments for – that are still owed on this matter." Mr. Martinez indicated that he understood.

Counsel for Wells Fargo drafted a proposed stipulation and order for adequate protection per the court's direction, but Mr. Martinez's counsel refused to sign the stipulation and order. Wells Fargo filed an ex parte application requesting that the court enter the order granting the Stay Relief Motion and ordering adequate protection.

The bankruptcy court entered the order ("Stay Relief Order"), which attached and incorporated an adequate protection order ("APO").

The APO first provided that Mr. Martinez must continue making his monthly maintenance payments toward the Second Lien and directed him to "make regular monthly payments in the amount of $519.56 (variable) commencing 12/15/2018."

The APO additionally provided that Mr. Martinez must cure the postpetition default on maintenance payments (totaling $4,569.37 through November 2018) by: (1) paying $1,500 by December 1, 2018; and (2) paying equal monthly installments of approximately $341.04 through September 2019, in addition to his regular monthly maintenance payments.

Finally, the APO provided that Mr. Martinez was entitled to a maximum of three notices of default; thereafter, Wells Fargo would be entitled to request termination of the automatic stay.

## C.    The motion for reconsideration

Shortly thereafter, Mr. Martinez filed a motion to alter or amend the Stay Relief Order under Rule 9023 ("Reconsideration Motion"). He argued that Wells Fargo did not have the right to seek "modifications" to the Plan in the guise of adequate protection. He requested that the bankruptcy court vacate the Stay Relief Order.

The bankruptcy court entered an order ("Reconsideration Order") denying the Reconsideration Motion on February 7, 2019. It noted that the Reconsideration Motion was rife with procedural defects. As to the merits of the motion, the court stated that "[t]he Plan deals with <u>pre</u>petition debts. The APO dealt with Debtor's <u>post</u>petition failure to pay ongoing monthly obligations." It noted that it had stated in the Confirmation Order that the "confirmation of the Plan [was] without prejudice to the rights of secured creditors with respect to post-petition defaults by the debtor(s)."

Alternatively, the court held that Mr. Martinez forfeited this argument because he failed to raise it in opposition to the Stay Relief Motion or at the hearing on that motion.

Finally, the court held that there was no equitable basis to grant Mr. Martinez relief.

Mr. Martinez timely appealed from both the Stay Relief Order and the Reconsideration Order.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(G). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court erred in granting the Stay Relief Motion and ordering Mr. Martinez to make adequate protection payments.

(2) Whether the bankruptcy court erred in denying the Reconsideration Motion.

## STANDARD OF REVIEW

"A bankruptcy court's determinations regarding stay relief are reviewed for an abuse of discretion[.]" *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 915 (9th Cir. BAP 2011) (citing *Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 919 (9th Cir. BAP 2009)).

Similarly, we review for abuse of discretion a bankruptcy court's denial of a motion for reconsideration. *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th Cir. 2010); *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 866 (9th Cir. BAP 2004).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of

the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

### A.  Mr. Martinez waived his argument that Wells Fargo was barred from seeking adequate protection payments.

The bankruptcy court held that Mr. Martinez failed to raise his argument concerning claim preclusion in connection with the Stay Relief Motion, so he could not move for reconsideration on that basis. We agree.

Although the federal rules do not acknowledge a reconsideration motion, "[a] 'motion for reconsideration' is treated as a motion to alter or amend judgment under [Civil Rule] 59(e) if it is filed within [fourteen] days of entry of judgment. Otherwise, it is treated as a [Civil] Rule 60(b) motion for relief from a judgment or order." *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001) (citation omitted).

The Ninth Circuit has instructed that a "[Civil] Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

The bankruptcy court correctly noted that Mr. Martinez failed to raise the argument that Wells Fargo is precluded from seeking stay relief either in his opposition to the Stay Relief Motion or at the hearing on that motion.

In fact, at the hearing, Mr. Martinez and his counsel did not even object to the APO. He presented the bankruptcy court with no reason why it should reconsider its earlier ruling.

Additionally, Mr. Martinez merely repeats on appeal the arguments raised in the Reconsideration Motion. He does not address the bankruptcy court's holding that his argument was untimely. He thus waived any challenge to the court's determination that he failed to timely raise this argument. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e will not consider any claims that were not actually argued in appellant's opening brief. Rather, we 'review only issues which are argued specifically and distinctly in a party's opening brief." (citations omitted)).

Furthermore, even if the bankruptcy court were required to consider his arguments raised in connection with the Reconsideration Motion, they are meritless. For the reasons stated below, the bankruptcy court did not abuse its discretion in issuing the APO and requiring Mr. Martinez to cure his failure to make postpetition maintenance payments.

B.   **Wells Fargo was not precluded from seeking adequate protection payments postconfirmation.**

Mr. Martinez argues that the bankruptcy court erred by granting the Stay Relief Motion and requiring him to comply with the APO, because Wells Fargo did not object to or appeal from the plan confirmation. His

arguments are meritless.

As a general rule, "[w]hen the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike. Confirmation has preclusive effect, foreclosing relitigation of 'any issue actually litigated by the parties and any issue necessarily determined by the confirmation order.'" *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (citations omitted). Put another way, we recently stated that "[a] plan is a contract between the debtor and the debtor's creditors. The order confirming a chapter 13 plan, upon becoming final, represents a binding determination of the rights and liabilities of the parties as specified by the plan." *Derham-Burk v. Mrdutt (In re Mrdutt)*, 600 B.R. 72, 76-77 (9th Cir. BAP 2019) (citing *Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 435 (9th Cir. BAP 1997); 8 Collier on Bankruptcy ¶ 1327.02 (Richard Levin & Henry J. Sommer eds. 16th ed. 2019)).

But the confirmation order does not preclude litigation about the debtor's post-confirmation defaults. The plan and confirmation order determine what the debtor must do; they do not decide whether the debtor has done those things. We have held that "[p]ost-confirmation defaults would not be considered at the confirmation hearing and are therefore not subject to res judicata flowing from the order." *Ellis v. Parr (In re Ellis)*, 60 B.R. 432, 434 (9th Cir. BAP 1985). We noted that "[f]ailure to make post-confirmation payments can constitute cause for lifting the stay." *Id.* at

435.

Mr. Martinez's basic argument is that Wells Fargo cannot seek to force him to increase his payments, because the payment terms in the Plan cannot be contested after confirmation. He contends that, after the bankruptcy court confirmed the Plan, Wells Fargo had no "right to make modifications through an insistence of an 'adequate protection plan' [sic]."

Mr. Martinez's argument borders on frivolous. The bankruptcy court did not require him to pay more than the Plan provided. The problem arose because Mr. Martinez had paid *less* than the Plan required. The court simply gave him a chance to catch up on his postpetition maintenance payments.

As the bankruptcy court correctly explained, "[t]he Plan deals with <u>pre</u>petition debts. The APO dealt with the Debtor's <u>post</u>petition failure to pay ongoing monthly obligations." Importantly, the Confirmation Order provided that "[c]onfirmation of the Plan is **without prejudice to the rights of secured creditors with respect to post-petition defaults** by the debtor(s)." (Emphasis added.) In other words, the Plan required Mr. Martinez to make his regular postpetition maintenance payments to Wells Fargo, and Wells Fargo was entitled to seek a remedy when Mr. Martinez breached his Plan. *See Watson v. Ditech Fin. LLC (In re Watson)*, BAP No. HI-17-1012-TaLB, 2017 WL 5196710, at *3 (9th Cir. BAP Nov. 9, 2017), *aff'd*, 754 F. App'x 599 (9th Cir. 2019) (rejecting the debtor's argument

13

that stay relief was improper for his failure to make postconfirmation payments "because [creditor] failed to object to his chapter 13 plan, which was confirmed, final under § 1327, and thus res judicata as to all issues that could have been raised").

Therefore, Wells Fargo's failure to object to plan confirmation did not prevent it from seeking relief from stay or adequate protection when Mr. Martinez defaulted under the Plan.

**C.    Mr. Martinez's argument that Wells Fargo schemed to "create" his default is meritless.**

Mr. Martinez contends that the bankruptcy court should not have ordered him to make adequate protection payments, because he was not in default. We reject this argument.

Section 362(d)(1) permits the bankruptcy court to grant relief from the automatic stay for cause, "including the lack of adequate protection." The decision whether to grant or deny relief from the automatic stay is determined on a case-by-case basis and "is committed to the sound discretion of the bankruptcy court." *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 351 (9th Cir. 1996).

We have previously instructed that "the bankruptcy court must have discretion to fix any initial lump sum amount [of adequate protection payments], the amount payable periodically, the frequency of payments, and the beginning date, all as dictated by the circumstances of the case and

14

the sound exercise of that discretion." *Paccom Leasing Corp. v. Deico Elecs., Inc. (In re Deico Elecs., Inc.)*, 139 B.R. 945, 947 (9th Cir. BAP 1992). Section 361 "sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent." *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984) (citation omitted).

Mr. Martinez argues that Wells Faro purposefully engineered his default under the Second Lien. He contends that Wells Fargo failed to properly apply payments to his account and "tampered with" his account numbers to cause him to default on the Second Lien.

These arguments are patently untenable. First, Wells Fargo refunded the allegedly misapplied funds for Mr. Martinez to use as payment toward the Second Lien. It is unclear why Mr. Martinez is now unwilling to pay amounts that he was earlier willing to pay.[4]

Second, there is no question that Mr. Martinez was in default on the maintenance payments. Wells Fargo's counsel represented to the court, and Mr. Martinez did not deny, that Mr. Martinez had not made the September,

---

[4] Mr. Martinez apparently tried to pay the Second Lien with the check that he received from Wells Fargo for the misapplied funds, but he failed to properly endorse it. The record is unclear as to the status of that payment.

October, or November 2018 maintenance payments.[5] Additionally, although Mr. Martinez asserts that he made the April through August 2018 maintenance payments (some of which were misapplied), he does not account for the overdue payments between December 2017 and March 2018. There is no genuine dispute that he is in default.

Third, even if Wells Fargo "tampered" with his account number, this allegedly occurred **after** the court issued the APO, and it did not cause the default, as Mr. Martinez alleges. Furthermore, even if Wells Fargo changed the account number associated with the Second Lien, making it difficult to make payments at a branch, the APO provided that Mr. Martinez would send his payments to a P.O. Box address and not make them at a branch.

Therefore, the bankruptcy court did not err when it rejected Mr. Martinez's arguments that Wells Fargo "created" a default.

## CONCLUSION

The bankruptcy court did not err in granting the Stay Relief Motion, issuing the APO, or denying the Reconsideration Motion. We AFFIRM.

---

[5] There is some evidence in the record that Mr. Martinez at least attempted to make the January 2019 payment, albeit at a branch location, rather than at the address directed by the APO.